CHASEZ, Judge.
This action was initiated by Mr. Robert Gurley, as administrator of the estate of his minor son, Kenneth D. Gurley, to recover for injuries sustained by Kenneth in the accident under consideration. Prior to trial, Robert D. Gurley and his wife Joy M. Gurley were divorced. Mrs. Gurley was awarded custody of Kenneth and was judicially declared his natural tutrix. She then was substituted as plaintiff and continued the action solely in Kenneth’s behalf, no claim being made by either parent in their individual capacities for any special damages or expenditures they may have incurred because of Kenneth’s injuries.
The case was tried before a jury which returned a general verdict in favor of plaintiff in the amount of $31,750.00. The trial judge rendered judgment in favor of plaintiff in accordance with the jury’s verdict. Defendants appealed from that judgment.
Factually there is no dispute. The only questions are whether under the facts as presented there was any negligence attributable to the defendant and whether the amount of the award was excessive in the event that there was negligence.
On Sunday morning, September 5, 1965 Mrs. Joy M. Gurley took her three children to Sunday School at the Bellevue Baptist Church in Metairie, Louisiana. Sunday School was conducted from 9:45 A.M. to 11:00 A.M. Thereafter Mrs. Gur-ley and the oldest child attended the church service lasting from 11:00 A.M. to approximately 12:00 noon. During this latter time, Kenneth and Robert were left in the church nursery. All children under four years of age were sent to the nursery rather than being allowed to attend services.
The children in the nursery were ordinarily supervised by one of the mothers because the church could not afford to hire a full time babysitter. On this particular Sunday, however, there was no mother to watch the children so Deborah Henry, the daughter of the pastor, Reverend William Henry, was allowed to sit with them. She had done this on many previous occasions and there seems to be no question but that the girl was capable of watching the children.
At some time prior to the beginning of the 11:00 A.M. services it was discovered that the air-conditioning unit in the nursery was not functioning. In order to make the room more comfortable, Reverend Henry placed a large fan in the nursery. The fan was approximately twenty-four inches square and the front and rear *300 thereof was covered with a wire guard. The spaces between the wire guards were one-half inch wide. The fan was placed on a book shelf, against the wall, approximately two and one-half feet off the floor.
When the nursery opened, Deborah stationed herself near the middle of the room in order to better watch the four or five children in the nursery. According to her testimony, she specifically warned the children to stay away from the fan. Toward the end of the nursery period she noticed Kenneth Gurley, who was at that time only two and one-half years old, moving in the direction of the fan. Before she could reach him he stuck his fingers between the grate and into the fan.
The church services concluded shortly thereafter and Mrs. Gurley returned to the nursery and found Deborah with Kenneth in the bathroom holding his hand under the faucet in the sink. She immediately grabbed the child and rushed him to Ochsner Foundation Hospital.
As a result of the injury it was necessary to amputate the index finger of Kenneth’s left hand through the distal end of the proximal phalanx. The ring finger of the same hand suffered severe lacerations with an open fracture of the proximal phalanx. The healing process was uneventful. The amputation stump healed satisfactorily with no residual sensitivity. The ring finger fracture healed and after three years there was only a 5° angulation of the ring finger which Dr. Dunn, the treating orthopedist, found to be within normal limits.
With respect to the issue of liability of the church, this Court finds the question to be extremely close. We do not think that the girl’s actions were negligent. She was in charge of five children under the age of four years. As active as small children are, it is inconceivable that the girl could maintain a constant close watch on them all at the same instant. Deborah testified that she saw Kenneth start for the fan and she started after him, but, unfortunately he got to it before she could get to him.
It remains then, that the only possible basis for liability is if Reverend Henry was negligent in placing the fan in the room with the small children. His only thought was surely to provide some relief to the people in the room because the air-conditioning was not working. The fan was possibly as safe a fan as could have been placed there.
Admittedly, the church cannot be considered as the insurer of Kenneth Gurley’s safety and was bound to exercise only reasonable care even though a young child was involved. See Pampas v. Cambridge Mutual Fire Insurance Co., La.App., 169 So.2d 200 (4th Cir. 1964).
However, at the same time it is foreseeable that a young child might stick his hand into a fan, especially when considering the instinctive curiosity so ever-present in children of Kenneth’s tender years. The same fan would not present a danger to an adult or even to a more mature child, but with very young children the utmost precautions must be taken. This is not to say that the standard of care owed to young children is something more stringent than reasonable care. But the reasonable care owed to young children does entail a greater amount of attention than the reasonable care owed to adults.
After a most careful analysis of the record, we cannot say that the jury committed manifest error in finding the church negligent and nothing is more certain in our jurisprudence than that, in the absence of manifest error, the findings of fact of the jury or trial judge will not be disturbed on appeal.
In considering the matter of quantum, however, this court feels that the jury committed manifest error in returning a verdict of $31,750.00. The verdict was general in nature, no interrogatories having been submitted to the jury. This Court *301 cannot help but feel that the jury was greatly influenced by the amount and nature of the expert testimony offered at trial.
There was much testimony by two psychologists, a Dr. Irving Fosberg, who testified in behalf of the plaintiff, and Dr. Suzanne Hill, in behalf of the defendant. They both testified that they had tested Kenneth and found his I.Q. to be in a range of from 68 to 73, which put him in the borderline area between “slow learner” and “mental defective”. Because of his low intelligence level, the two psychologists agreed that the boy would never be capable of performing more than unskilled or semi-skilled labor. The plaintiff’s expert, Dr. Fosberg, admitted that Kenneth’s limited intelligence would probably have prevented him from advancing beyond unskilled work, even if he had not lost his finger. Although recognizing that a missing finger would not interfere with many types of unskilled work, Dr. Fosberg stated that the injury could reduce his “em-ployability” as an unskilled laborer and could possibly affect his chances of attaining a semi-skilled job. Dr. Fosberg’s conclusions were based on Kenneth’s being left-handed (his left hand was injured). Dr. Fosberg relied on information given him by Kenneth’s mother who told him that Kenneth was left-handed.
His left-handedness or not was disputed by Dr. Hill who concluded that Kenneth was right-handed, based on tests she administered to him. He was either actually right-handed or had become so through use of that hand after the accident according to Dr. Hill. She testified that Kenneth uses his right hand as well as other five year olds used their right hands and who were right-handed.
The whole of the expert testimony was directed toward establishing future damages in the form of lost earnings that Kenneth will suffer because of his injury. It seems to this court that this evidence is too speculative to be the basis for future damages. In order to recover future damages, the plaintiff must prove by a preponderance of evidence that he is reasonably certain to incur such damage. Mere possibility is not sufficient. Collins v. Schulz, La.App., 196 So.2d 303 (4th Cir. 1967).
The wage differential between skilled and unskilled labor is not discernable to any degree of accuracy. The testimony of the experts that Kenneth could possibly be a semi-skilled worker or that his missing finger could possibly affect his employa-bility is too tenuous to support a judgment. This Court can think of jobs in the unskilled or semi-skilled area in which the absence of a part of an index finger would be of no significance, for example, driving a truck, janitorial work, garbage collector and the list could go on.
Suffice it to say that this Court is of the opinion that in granting an award of $31,750.00 for the injury suffered by Kenneth Gurley, it abused the wide discretion accorded it by the provisions of Article 1934 of the Civil Code.
After considering the guidelines announced in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967) and Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), we have concluded that the award was excessive and we will therefore reduce it to within an acceptable range for the amount of damage done by the injury. We conclude after examining authorities wherein the injuries were similar in severity, but not necessarily in nature, that an award of $12,000.00 would more nearly compensate plaintiff for his injuries. The award will, therefore, be reduced accordingly.
The plaintiff in its original petition erroneously named St. Paul Fire & Marine Underwriters, Inc. as defendant. This defendant answered and corrected the name to read St. Paul Fire & Marine Insurance Company.
*302 For the foregoing reasons, the verdict of the jury rendered as judgment of the lower court in favor of plaintiff, Mrs. Joy M. Gurley, as Natural Tutrix of her minor son, Kenneth D. Gurley, on behalf of and for the use and benefit of her minor son, Kenneth D. Gurley, and against the defendant, St. Paul Fire and Marine Insurance Company, in the sum of $31,750.-00, is reduced to the sum of $12,000.00, with legal interest from date of judicial demand and for all costs; and fixing the expert’s fees at $150.00 and taxing them as costs. The judgment in all other respects is affirmed. Costs of the appeal is assessed to appellant.
Amended, and as amended, affirmed.