290 So.2d 362 (1974)
James H. PFISTER
v.
The PHOENIX OF HARTFORD INSURANCE COMPANY et al.
No. 5879.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Rehearing Denied March 8, 1974.
Writ Refused April 29, 1974.
*363 Frank J. D'Amico, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald O. Collins, New Orleans, for defendant-appellant The Phoenix of Hartford Ins. Co.
Dillon & Williams, Gerard M. Dillon, New Orleans, for defendants-appellants Fireman's Fund Ins. Co. and Albert J. Ward, Jr., trustee.
Before GULOTTA and STOULIG, JJ., and BAILES, J. Pro Tem.
JULIAN E. BAILES, Judge Pro Tem.
This is an appeal by all defendants from the judgment of the trial court rendered on plaintiff's tort action and workmen's compensation claim. The trial court awarded judgment to plaintiff against Fireman's Fund Insurance Company and Albert J. Ward, Jr., in solido, in the amount of $200,000, and in favor of plaintiff and against The Phoenix of Hartford Insurance Company for 400 weeks compensation at the rate of $35 per week, less a credit for compensation benefits previously paid, on its finding that plaintiff was totally and permanently disabled in accordance with LSA-R.S. 23:1021 et seq.
The tort action was tried before a civil jury and the judgment was rendered in the trial court in conformity with its verdict, the workmen's compensation claim was tried by the district court simultaneously with the tort action.
We find as a matter of law the judgment is erroneous and, accordingly, it is reversed.
For a cause of action against Fireman's Fund Insurance Company and Albert J. Ward, Jr., plaintiff alleges:
That Albert J. Ward, Jr., as trustee and superior officer of Southern Land Title Corporation in Reorganization, failed to heed the warnings of plaintiff and others about the unsafe working conditions and failed to take necessary precautions to prevent robberies and burglaries of the apartment complexes despite repeated requests on the part of the plaintiff and others to furnish necessary personnel and sufficient assistants to prevent these occurrences.
Additionally, plaintiff alleged that in his capacity of immediate supervisor and superior, Albert J. Ward, Jr., failed to provide:
1. Plaintiff a safe place to work;
2. Capable, sufficient, intelligent and adequate personnel to guard the apartment complexes;

*364 3. Adequate locks and an adequate emergency alarm system;
4. Inspection of the premises and safeguards against criminal acts such as was committed against plaintiff on December 2, 1967.
The trial record disclosed the occurrences of numerous criminal activities at the properties owned by Southern Land Title and under the general managerial supervision of the plaintiff prior to his injury. Police reports established the thefts of window air conditioning units and other property on February 27, 1967, March 26, 1967, and July 17, 1967, at the location where Mr. Pfister was assaulted. Mr. Dan Carroll, a rental employee of the defendant, was held up at gun point on May 3, 1967 and on June 17, 1967 at one of the company's other apartment buildings located approximately one and one-half miles from where the plaintiff was injured. The record shows that all these apartments were located in low income areas where the crime rate is known to be very high and the use of narcotics is prevalent.
On the morning of December 2, 1967, plaintiff was at work in the office of one of the buildings located at 1507 North Robertson Street in New Orleans, when two assailants entered the office and in the course of a robbery severely beat the plaintiff with a shovel. Plaintiff sustained injury to his left arm and upper back, multiple lacerations and contusions in the scalp area, and two compound, comminuted depressed skull fractures. He was hospitalized for 14 days and then was discharged to his home. His condition at discharge was stated to be "satisfactory" and it was anticipated that he could resume employment in six weeks. Plaintiff remained home for approximately five months until May 15, 1968, when he was employed in the office of the Mayor of the City of New Orleans as a "Human Relations Assistant."
Assuming for argument that the defendant, Ward, had sufficient notice of the dangerous conditions in which the plaintiff was working to charge him with negligence, we now must determine whether plaintiff's actions under the circumstances constitute contributory negligence, thus barring his recovery.
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own safety and protection, the standard being that of a reasonable man under like circumstances. Smolinski v. Taulli, La., 276 So.2d 286 (1973). In essence, did plaintiff have full knowledge of the danger in which he was placed and were his actions that of a reasonable man under the circumstances to secure his own safety from attack. If we find that plaintiff fully appreciated the risk he was incurring and freely and voluntarily chose to incur it, then it can be said that he assumed the risk and is guilty of contributory negligence.
The plaintiff was fully aware of the danger, in fact more aware than the defendant, Ward. Plaintiff was working in the area on a daily basis and had first-hand knowledge of the prior thefts and robberies. Testimony at trial proved that plaintiff feared for the safety of the other employees and for his own. Plaintiff requested and set up a meeting of the employees to discuss the situation with Mr. Ward. Mr. Ward's representative, Mr. Wuescher came to the meeting and the plaintiff complained to him of the danger the employees were subjected to.
No new security measures were taken by Ward to protect the employees subsequent to this meeting. Plaintiff apparently never inquired further to find out why, but continued to work under these conditions until the criminal attack on him some five months later.
It is an established principle of law that if an employer puts his employee in a position of undisclosed danger, he is liable to the employee who is injured thereby, but *365 if the employee exposes himself to a known danger, he assumes the risk and is guilty of contributory negligence. See: Swilley v. American Fire & Casualty Company, La.App., 148 So.2d 157.
Plaintiff relies principally on Chaney v. Brupbacher, La.App., 242 So.2d 627; Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133; Hall v. Hartford Accident & Indemnity Co., La.App., 278 So.2d 795; and Boure v. New Orleans Public Service, Inc., La.App., 255 So.2d 776, to refute the contributory negligence.
In Chaney the decedent employee was electrocuted when the boom of a crane, which was being used to assist in the unloading of steel beams, came into contact with a high voltage power line located over the work yard. The corporate vice-president had directed that the crane be moved from its original position to a position closer to the job site and closer to the wire. Contact was made with the wire when the decedent was walking away from the crane, pulling on the jib line to bring it down to attach to a beam intended to be moved. Contributory negligence was not appropriate in this case in that the deceased did not have full knowledge of the danger of the situation and could therefore not be said to have assumed the risk. By directing the moving of the crane, the defendant vice-president had created the dangerous situation and had a greater appreciation of the risk than the deceased.
The plaintiff in the Langlois case was injured by breathing gas fumes that escaped from the defendant's premises. The plaintiff was a fireman sent on a rescue mission to a place adjacent to the defendant's chemical plant. The defendant pled contributory negligence and assumption of risk in that plaintiff did nothing to protect himself from breathing the fumes. The evidence established that plaintiff had received training for working in areas contaminated with gas and had been taught the nature of the risks involved as well as the proper use of the safety breathing equipment which was at his disposal at the time of the accident and he chose not to use. The court stated that contributory negligence was not a defense because original negligence on the part of the defendant was not present and the defendant was strictly liable. Although the plaintiff was more knowledgeable than most about the nature of exposure to gases, the court held that he had not assumed the risk. The dangerous condition did not emanate from the site of the rescue mission, but came from the adjoining property. The plaintiff not only encountered the gas at the rescue site but in the fire truck returning from the mission and later at the firehouse. His exposure to the risk in the line of his duty was minimal.
Justices Hamlin and Summers both wrote dissents to the majority opinion stressing that the plaintiff had assumed the risk. Plaintiff knew upon leaving the firehouse that he was called to assist in a rescue mission made necessary by gas escaping from an unknown source. Upon arriving at the scene the gas was immediately apparent. It could be seen and plaintiff's eyes began to water, his throat tickled and he started coughing. He had been trained that when encountering gas, especially gas of an unknown type, he was to assume the worst and take precautionary measures to guard against being overcome. When he experienced the reactions noted, it became incumbent upon him to use an available air pack for his protection.
The Hall case involved an injury to the plaintiff when a motorcycle wheel which he was assembling exploded as he inflated the tire. In the course of assembling the wheels, plaintiff mounted tires on the wheels and inflated them to properly seat the tire. He was instructed to inflate them to a pressure of 40 to 45 p. s. i. although the recommended pressure for actual use was 15 p. s. i. The inflating station used for this purpose delivered a maximum pressure of 100 p. s. i. The service hose from the air compressor was fitted with a gauge that registered the internal pressure of the tire being inflated only when the *366 button controlling the air flow was released by the operator. Negligence was established on the part of the employer for providing an inadequately designed gauge that did not constantly register the internal pressure of the tire. While plaintiff could have periodically released the button and checked the pressure of the inflating tire, the court felt that the margin between the pressure required to seat the tire and the pressure at which the wheel assembly separated was too small to be a safe one. The ultimate strength of the wheel assembly was only approximately twice the expected load. The court felt that a ratio of at least four to one would be necessary under the circumstances. These were factors within the control of the defendant and should have been known by him. On the other hand, plaintiff neither created and maintained the unsafe situation nor was he imputed with knowledge that it existed. Under the circumstances, plaintiff's actions were not negligence on his part.
The final case cited by plaintiff to refute contributory negligence is Boure v. New Orleans Public Service, Inc. The plaintiff sued Public Service for injuries he received when the hose to a spray painter he was operating came in contact with a high tension wire. Plaintiff was painting the underside of a new bridge in close proximity to the wire which ran under the bridge at a right angle. The majority court determined that Public Service had notice of the work going on so close to the wire. It was aware of the danger of the situation and had offered to de-energize the wire while work was progressing in that area. In the opinion of the court, the offer to de-energize the line was insufficient to exculpate the defendant of negligent conduct. The court further reasoned that the plaintiff was not guilty of contributory negligence. While the plaintiff was aware of the line under him, he still could not have prevented the occurrence of the accident, for it was not attributable to a lack of knowledge or the failure to take adequate measures to protect his safety. He had no control over his employer, the location where he was directed to paint nor any request for Public Service to de-energize the line. Further, the responsibility for keeping the hose away from other objects while he was painting was that of his helper.
These cases are clearly distinguishable from the present case. In Chaney and Hall the court found that the plaintiffs did not possess the necessary knowledge of the danger or voluntarily assume the risk. In both cases, the employer had created the dangerous situation and possessed a knowledge of the danger superior to that of the employee. In the present case the plaintiff fully realized the risks attached to the job and realized them more than the defendant. He had the requisite knowledge of the circumstances to voluntarily assume the risk.
The court felt in Langlois that the risk involved was only minimally related to the plaintiff's job. The court seemed to say that only in the line of duty could a situation present itself wherein the plaintiff fireman could have assumed the risk. The danger encountered by Mr. Pfister in the present case was clearly related to the duties of his job.
Finally, the facts in the Boure case lack the necessary ingredient of voluntary assumption of the risk. While the plaintiff was aware of the danger the presence of the high power line created, the court found that he had no control over the situation. He could not, therefore, have assumed the risk. The facts of the present case show that Mr. Pfister not only appreciated the danger of the situation but tried to remove that danger. However, he cut his efforts too short. After his complaints were made in the meeting with Mr. Wuescher, he continued to work in the same unsafe conditions and did not seek further relief from Mr. Ward.
We find the plaintiff was fully aware of the conditions prevailing in the area of Crescent Arms Apartment located at 1507 North Robertson Street. The plaintiff was *367 a stockholder of Southern Land Title Corporation and had been employed since 1960 in this capacity and had worked at the same location prior to the bankruptcy proceeding and the appointment of Mr. Ward as Trustee.
It was at the insistence or the behest of the plaintiff that a meeting with Mr. Wuescher was held and at which the request was made of Mr. Ward that security guards be employed.
The record clearly shows that the plaintiff was more aware of the situation in this area than was Mr. Ward. Even though, and in spite of the fact that the security guards were not furnished the plaintiff continued to work as he had prior to the request for security guards.
The guards were requested in July 1967 and the criminal attack on Mr. Pfister occurred in December, 1967.
Inasmuch as the plaintiff was fully aware of the conditions existing and also aware of the lack of security guards, it is held that he assumed whatever risk was involved in his employment.
It is argued by plaintiff that the foreseeability is the test in determining the defendants' negligence. For the sake of argument, we will assume that defendant was negligent in failing to take steps to safeguard the safety of the plaintiff. Even though it was foreseeable that robbers might attack plaintiff, with him fully possessed of the facts, it was as foreseeable to plaintiff as defendant. With this knowledge he chose to assume the risk.
Plaintiff, for application of foreseeability, relies on the case of Gurley v. St. Paul Fire & Marine Underwriters, Inc., (1970) La.App., 242 So.2d 298. We find the facts inapposite. In this cited case, a two and one-half year old child injured his fingers when he placed them through a fan guard. This court held it was foreseeable that a child of that age would thrust his fingers through the guard and injure himself.
Counsel for the defendant submitted and requested charges on contributory negligence and assumption of risk be given the jury. It was manifest error on the part of the trial judge not to instruct the jury on those principles of law. The jury did not have the correct law upon which to base their verdict.
We now turn our attention to the plaintiff's workmen's compensation claim. As evidenced in the record plaintiff was employed in many varied positions during his work career prior to his employment by Southern Land Title Corporation in 1960. He has no particular skill or training for the job of managing apartments and has no specific training in any particular field. Approximately five months after his injury, he was employed by the Mayor's Office of the City of New Orleans at a salary of $1,000 per month and is apparently equally well suited for that job as for his prior employment.
Medical testimony introduced by plaintiff fails to establish that he had any disability at the time he entered the employ of the City of New Orleans on May 15, 1968. No loss of hearing was established nor was it established that he has any disability from high blood pressure, even assuming it was accident related.
No proof of any medical expenses was introduced in evidence.
The judgment of the trial court awarding workmen's compensation not to exceed 40 weeks, therefore must be amended to allow compensation at the rate of $35.00 per week beginning December 2, 1967 and terminating May 15, 1968, subject to a credit for any benefits already paid.
For the foregoing reasons the judgment of the trial court rendered on the jury's verdict awarding the plaintiff $200,000 is reversed and the trial court's judgment on the workmen's compensation claim is amended to award compensation as above set forth. All costs in both the trial court *368 and this court are to be paid by the plaintiff.
Reversed in part, amended and rendered.
GULOTTA, Judge (dissenting).
I respectfully dissent.
It appears clear from the record that plaintiff was an employee of Southern Land Title Corporation in reorganization and that Albert J. Ward, Jr., as trustee, was an executive officer of the corporation. An executive officer's responsibilities are set out in the recent case of Canter v. Koehring Company, La., 283 So.2d 716 at page 721 (1973). These duties, among others, are:
"3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
"4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm."
See also, Adams v. Fidelity and Casualty Co. of New York, 107 So.2d 496 (La.App. 1st Cir. 1958); Johnson v. Schneider, 271 So.2d 579 (La.App. 1st Cir. 1972).
Applying the guidelines set forth in Canter, I am of the opinion Ward is personally liable.
The facts in the instant case clearly establish that Ward was made aware of the fear of employees for their safety because of a prior history of thefts and robberies in the apartment complex. Such was the fear that a meeting of the employees was provoked and had with Ward's designated representative, David Wuescher.
At this meeting, additional security such as an additional security guard was requested. This information or request was relayed to Ward; however, no additional security was provided. Specific concern was expressed by plaintiff because he was a collector of rents and had occasion to carry collected rent payments. Ward was aware of this concern. The subsequent attack upon plaintiff resulting in his injuries proved these fears to be well founded.
It is clear that Ward's failure to provide additional security under the circumstances of this case constitutes neglect of a duty of care owed to his employees.
In this respect, I find error in the result reached in the concurring opinion.
I further fail to find merit in the conclusion that plaintiff's assumption of the risk constitutes contributory negligence and bars his recovery. It is indeed a harsh rule when an employee is denied recovery for injuries received and is charged with the assumption of the risk where an employer is advised of a danger and he (employer) has the capacity and ability to remedy that hazard but fails to do so.
*369 The option of termination of employment by the employee has been held to be an unreasonable alternative in Chaney v. Brupbacher, 242 So.2d 627 (La.App. 4th Cir. 1970).
In Chaney, the widow of an electrocuted employee brought a wrongful death action for herself and her minor children against two officers of the corporate employer and their insurer. Also made a party defendant was the utility company who supplied the voltage to the lines which caused the death. In reversing the trial court which had dismissed plaintiff's suit, this court held that it was not negligence on the part of the employee to work under the unsafe conditions. In effect, these circumstances do not constitute assumption of the risk barring plaintiff's recovery. The court said, at page 631:
"* * * but in our opinion a workman's superior cannot create or permit danger and send the workman into it with a warning and escape liability on a theory that the workman was contributorily negligent merely by going into the danger. The workman's only other alternatives are to try to tell his superior how to run the job, or to quit." (emphasis ours)
The court went on to say:
"The test for negligence is reasonableness. While it may be true that the reasonable man would wish to avoid the known risk here, an employee is not entirely free to do so. He cannot simply decline to do the work, because he would then subject himself to loss of his job, his means of support for self and family."
The court then went on to conclude that Chaney, a man faced with only the alternative of loss of employment and mindful of his own obligations (wife and children) had acted within the standard of a reasonable man and was not negligent.
Further, in the case of Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), plaintiff, a fireman, sued for personal injuries sustained from inhalation of a gas that had escaped from defendant's plant which was adjacent to the place where the plaintiff was sent on a rescue mission. Plaintiff had responded to an alarm for assistance to persons trapped in a tank by a gas. Plaintiff did not use the gas mask on the fire truck during his exposure. He and the other members of his company were subjected to the gas escaping from defendant's premises. In concluding the contentions of defendants as to assumption of risk and contributory negligence were without foundation, the court stated at page 140:
"* * * Usually, the assumption of risk doctrine will apply where the nature of the relationship of the parties appears to exact consent from the one injured to be exposed to possible harm. In such situations the plaintiff understands the risk involved and accepts the risk as well as the inherent possibility of damage because of the risk."
The court went on to say:
"A plaintiff who with full knowledge and appreciation of the danger voluntarily exposes himself to the risks and embraces the danger cannot recover damages for injury which may occur."
Further, the court stated at page 141:
"* * * We must examine the plaintiff's appreciation and knowledge of the risks, his ability to avoid or minimize the risks, and whether he has consented to encounter the risk. The interests of the parties must be balanced. Plaintiff is not required to surrender valuable rights and privileges because defendant's conduct threatens him. Yet if the plaintiff could readily avoid or mitigate the damage caused by defendant's conduct and he knows how to do so, he cannot act in such a manner as to invite injury."
However, the majority determines that plaintiff's knowledge of the danger places him in a less advantageous position from *370 those who were granted recovery in Chaney, Boure, Hall and Langlois cases.[1] I do not agree. I am not convinced that in Chaney and Langlois the court concluded those plaintiffs had no knowledge of the existence of a hazard. Moreover, in the Boure case, the court concluded that plaintiff was charged with knowledge of the existing hazard since it was apparent to even the most casual observation.
In the instant case, plaintiff had knowledge of the existence of a danger; however, he sought the assistance of his employer to alleviate or minimize the hazard. Plaintiff certainly had the right to assume that the danger would be minimized. He was not given any indication that additional security would not be provided. It is significant that the premises involved includes large apartment complexes. Plaintiff had every reason to believe that financial resources were available to the employer to adequately meet the need of the additional security requested. Pfister did not assume the risk. He informed the trustee of the danger in order that the risk for himself and his fellow employees might be minimized. The unanimous verdict of the jury in the case awarding recovery to plaintiff, in my opinion, is correct.
Accordingly, I respectfully dissent.
STOULIG, Judge (concurring).
I respectfully concur. I fully subscribe to the application of the assumption of risk doctrine if the negligence of the executive officer, Albert J. Ward, Jr., is assumed. However I am convinced that the plaintiff has failed to sustain his tort action against this defendant by a preponderance of evidence.
To successfully carry this burden, it was incumbent upon Mr. Pfister to prove that Ward had knowledge or should have known of the dangerous exposure from criminal activities in the area and, as a reasonable man, should have foreseen that his failure to provide guards or adequate security would in all probability result in injury to the employee. Or, stated another way, the lack of security personnel was a substantial or proximate cause contributing toward plaintiff's injuries.
The mere fact that plaintiff was injured while in the employ of a corporation for which the executive officer was acting as a judicially appointed trustee in reorganization does not absolve or alter the obligation to sustain his allegations of negligence to the same extent as required in any ordinary tort action. I am of the opinion that Mr. Pfister failed to carry this burden.
What knowledge did Mr. Ward have of the existing dangerous criminal activity? It affirmatively appears from the record that Mr. Ward was of the opinion that the employees' warnings of danger were restricted to the nighttime. The employees communicated their concern to the trustee through his administrative assistant, Mr. Stanley Wuescher, at a meeting held the latter part of July, 1967. Being of the opinion that the complaints addressed themselves to the nighttime criminal activities in the area, the trustee issued instructions that the employees were not to undertake any of their duties of employment at night except in cases of dire emergency.
The fact that Mr. Ward frequently visited the various apartment complexes under his jurisdiction during the daytime unannounced, unarmed and unaccompanied while making personal inspection of the premises substantiates the fact that he was not aware of any unusual danger or high risk during daylight hours.
The actions of the plaintiff and his co-employees tend to indicate that apparently *371 they did not consider the daylight hours to be unusually dangerous. Such a conclusion is warranted from the fact that they requested one guard as security for several apartment complexes located in different areas of the city and an additional guard at nighttime besides the one provided by the trustee. Prior to the reorganization proceedings, the corporate employer had only provided a guard for a period of two months, even though plaintiff had been in its employ for seven years at the time of his injury. Further, the failure of the plaintiff to pursue his request for the appointment of a daytime guard during the intervening five-month period between the original request and the date of his injury can only lead to the conclusion that he did not feel the danger of bodily harm was imminent.
What was the crime incident experience concerning both personnel and property of the corporation? It consisted of two armed robberies at one apartment building located more than a mile from the scene of the robbery of plaintiff and several thefts of air-conditioning equipment from the apartments in the complex where Mr. Pfister was robbed.
Were these incidents of crime, coupled with the employees' request for one day-time guard, sufficient to alert a reasonable and prudent person of an unusual danger to his employees? It is difficult to charge an executive officer with the knowledge that he should have furnished security personnel for each of the several complexes when those most conversant with the situation and existing conditions the employeesonly requested one guard for the four different apartment buildings.
Lastly had the trustee complied with the request of the employees, would this robbery and injury have occurred? It is impossible for one man to be in several locations at the same time. It is pure speculation to assume the appointment of a day-time guard would have prevented the crime in which plaintiff was injured.
From my foregoing analysis and evaluation of the evidence, I am convinced of the failure of plaintiff to bear the burden of proof necessary to render the executive officer liable in tort.
NOTES
[1] Chaney v. Brupbacher, 242 So.2d 627 (La. App. 4th Cir. 1970); Boure v. New Orleans Public Service, Inc., 255 So.2d 776 (La.App. 4th Cir. 1972); Hall v. Hartford, 278 So. 2d 795 (La.App. 4th Cir. 1973); Langlois v. Allied Chemical Corporation, 258 La. 1067 249 So.2d 133 (1971).