GULOTTA, Judge.
This is an appeal from a judgment awarding total and permanent disability benefits as well as penalties and attorney’s fees.
On September 21, 1970, while employed as a mechanic’s helper, plaintiff, Leo J. Melerine, suffered the amputation of the bone of the right thumb, including the distal joint (the one most remote from the hand) and a small portion of the bone between the distal joint and the proximal joint (the one joining with the hand). In seeking dismissal of plaintiff’s claim, defendants contend that the employee is entitled to be compensated for the loss of a thumb in accordance with the provision of LSA-R.S. 23:1221(4) (a), which provides for workmen’s compensation benefits for a total of 50 weeks.[1]
According to the defendants, the plaintiff has been paid all benefits and is not entitled to any additional compensation since they made weekly payments to him in excess of 63 weeks. Defendants further point out that plaintiff not only has returned to .his former employment as a mechanic’s helper but has been promoted to a *811 mechanic since the accident and has performed adequately and well in both positions (for approximately a year) until his discharge because of a work force reduction in October, 1971.[2] Defendants reason, therefore, that the trial judge erred, under the circumstances, in awarding total and permanent disability benefits, penalties and attorney’s fees.
Plaintiff, on the other hand, insists that although he returned to his former employment after the accident, he carried out his responsibilities and worked while experiencing substantial pain. Specifically, plaintiff claims that sensitivity to touch at the point of the amputation causes pain and discomfort. Furthermore, plaintiff argues his disability will not allow him to be competitive with other mechanic’s helpers or mechanics. Under the circumstances, Melerine claims, he is totally and permanently disabled.
Plaintiff suffered a traumatic amputation just below the distal joint of the right thumb on September 21, 1970. He returned to work on November 16, 1970 and was assigned duties in a tool room because of his inability, at that time, to function as a mechanic’s helper. Melerine did this work for approximately three or four months, after which he resumed the duties of his former employment. Subsequently, he was promoted to a journeyman mechanic. Although Melerine performed adequately as a mechanic’s helper, was later promoted to a mechanic, and his employment was terminated not as a result of pain but because of work force reduction, nevertheless, we find that the record clearly shows that he did, in fact, work in substantial pain.
According to plaintiff’s testimony, he suffered pain in the amputated area at such time that the thumb came into contact with any firm object. The pain continued and persisted during the entire time of his employment subsequent to the accident.
Plaintiff’s testimony was corroborated by that of his foreman, W. L. Brooks, who stated that while plaintiff could do the work, the thumb bothered him. He indicated that plaintiff complained the thumb was sensitive to touch.
In November, 1971, because his hand was still hurting, Melerine returned to the treating physician, Dr. John McLachlan, an orthopedic surgeon, who recommended corrective surgery to relieve the sensitivity of the affected area. Dr. McLachlan initially saw plaintiff on October 11 or October 13, 1970 (the record is not clear as to date) and completed skin grafts to the affected area on November S, 1970. This witness explained that the amputation site was sensitive to pain from touch because the “skin adhered to the bone.” He estimated that plaintiff had a 100 percent disability of the thumb and 50 percent disability of the hand. It was his opinion that Melerine could not be as efficient as other mechanics because of the disability, but that plaintiff could return to work.
On October 7, 1971, at the request of Dr. McLachlan, plaintiff saw Dr. Louis Krust, a plastic surgeon. He indicated that the skin was sensitive to pressure and that corrective surgery was required to enhance plaintiff’s ability to use the remaining part of the thumb. Dr. Krust explained that corrective surgery would afford padding over the bone by the utilization of a further skin graft and by the removal of the scar tissue, thereby relieving the sensitivity of the thumb. He explained further that there is a scar directly over and attached to the bone; and when this comes into contact with a firm object, pain is experienced. The estimated cost for this corrective surgery is $1,650.00 requiring thirteen weeks involving three operative procedures. Dr. Krust indicated that plaintiff suffered a 15 percent loss of the hand and approximately 30 to 40 percent loss of the thumb. According to Dr. Krust, the injury did not preclude the plaintiff from doing *812 the work of a mechanic, but it would impair him because of the pain suffered while doing the work. He stated that corrective surgery would reduce this impairment but would not eradicate it.
The record is clear that plaintiff was able to perform the duties of a mechanic’s helper but to do so resulted in discomfort and pain at the amputated site of the thumb. In the case of Lavergne v. Southern Farm Bureau Casualty Ins. Co., 171 So.2d 751 (La.App.3rd Cir. 1965), the plaintiff employee had suffered a job-related hand injury. He claimed that he was totally and permanently disabled because he experienced swelling and pain in the hand, particularly when he was performing strenuous work. The court in that case stated:
“The law does not expect, and it does not contemplate, that a worker, in order to earn a living, must work in pain or that he must work when it will materially increase not only the hazards to his own health, but also to those of his fellow employees. Brannon v. Zurich General Accident & Liability Insurance Co., 224 La. 161, 69 So.2d 1.”
The court then cites jurisprudence to the effect that in order to be permanently and totally disabled because of pain, the pain must be of a substantial nature; it must be more than a trivial or minor discomfort.
The court concluded that even though the pain experienced by the employee was more of an aching pain than a crippling pain, it could not say that the trial judge erred in awarding total permanent disability benefits.
Applying the language of the Lavergne case, supra, to the instant one, we find no error in the trial court’s conclusion that plaintiff is totally and permanently disabled from resuming his former employment as a mechanic’s helper.

Penalties and Attorney’s Fees

Nor do we find error in the assessment of penalties and attorney’s fees. The defendant and its insurer were aware of the need for additional corrective surgery and of plaintiff’s disability and pain. The foreman acknowledged that plaintiff complained of pain while working, and that plaintiff indicated the need for further surgery. Mrs. Violet Melerine, plaintiff’s wife, testified that she advised an adjustor for the insurer of the need for corrective surgery to reduce the pain, and he responded by an offer in full settlement, which plaintiff refused because the amount offered did not cover the cost of the operation. Furthermore, in a letter to the defendant insurer dated May 10, 1971, Dr. A. G. Kleinschmidt, Jr., stated that plaintiff complained of sensitivity to touch and discomfort. He further indicated that an additional operation might be required if pain persisted. Arrangements had been made for plaintiff to undergo the additional surgery on December 13, 1970. However, this was aborted when the insurer refused to accept responsibility for the payment of the hospital bill. Written demand was subsequently made on the insurer on December 14, 1971, for payment of the costs of corrective surgery and for the resumption of compensation payments. Thereafter, defendant sought, from plaintiff’s attorney, medical information on the plaintiff; and on January 10, 1972, a report dated January 6, 1972, from Dr. Krust was forwarded to defendant indicating the necessity for and the cost of the corrective surgery. Compromise discussions followed. On March 15, 1972, defendant was informed of plaintiff having made a change of counsel, and this suit followed on April 26, 1972. Plaintiff has never undergone the corrective surgery. Furthermore, he has not been employed as a mechanic’s helper since his discharge in November, 1971, and has not been paid workmen’s compensation benefits after they were discontinued on October 31, 1971.
According to the provisions of LSA-R.S. 23:1201.2 in the workmen’s compensation law, penalties and attorney fees are assessable against the employer when the refusal of payment is arbitrary and capricious and *813 without probable cause. This has been extended to the employer’s insurer in LSA-R.S. 22:658, which provides for the same penalties when that insurer fails to make payment under the same conditions.
In Jemison v. City of Kenner, 277 So.2d 728 (La.App. 4th Cir. 1973), this court, in concluding that the denial of a mandatory inj unction was arbitrary and capricious, accepted the definition of “arbitrary” defined in Black’s Law Dictionary as “not done or acting according to reason or judgment.” In that case, we quoted with approval the following definition of “capricious” as contained in the case of Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2nd Cir. 1960):
“a conclusion contrary to substantiated competent evidence.”
In the case of Steadman v. Pearl Assurance Company, 167 So.2d 527 (La.App. 4th Cir. 1964), the court in finding that a defendant insurer was arbitrary and capricious in refusing to pay a claim stated,
“ * * * the words 'arbitrary’ and ‘capricious’ are practically synonymous and mean without reasonable cause and do not necessarily imply an opprobrious connotation; arbitrary action is based upon one’s will and usually implies an abuse of one’s authority or power.”
The failure of the defendants to resume payments after the communication of January 10 and to authorize the corrective surgery under the circumstances was clearly arbitrary and capricious, particularly since the insurer had knowledge of plaintiff’s medical and work history. The trial judge properly cast the defendants in judgment for statutory penalties and attorney’s fees in the sum of $350.00.
In his judgment, the trial judge stated that the defendants were granted leave to have the extent of plaintiff’s disability redetermined after the corrective surgery is performed and further that the payment of penalties and attorney’s fees await final determination of plaintiff’s disability following the surgery. There is ample provision for such a judgment,[3] and the circumstances of this case warrant such a conditional judgment. Accordingly, the judgment is affirmed.
Affirmed.

. LSA-R.S. 23:1221(4) (a) reads:
“Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

“(4) In the following cases the compensation shall be as follows :
“(a) For the loss of a thumb, sixty-five per centum of wages during fifty weeks.”

. Plaintiff returned to work on November 16, 1970.

. See LSA-R.S. 23:1331.