295 So.2d 844 (1974)
Lyle A. TOOMER
v.
HIGHLANDS INSURANCE CO. and Prestressed Concrete Products Co., Inc.
No. 9832.
Court of Appeal of Louisiana, First Circuit.
May 28, 1974.
Rehearing Denied July 3, 1974.
*845 Walton J. Barnes, Baton Rouge, for appellant.
John J. Cooper, New Orleans, for appellee.
Before LOTTINGER, BLANCHE and de la HOUSSAYE, JJ.
BLANCHE, Judge.
This is a workmen's compensation suit wherein plaintiff, Lyle A. Toomer, seeks total and permanent disability benefits resulting from an accident sustained by him on May 27, 1971, while he was employed by defendant, Prestressed Concrete Products Company, Inc. The defendant's workmen's compensation insurer, Highlands Insurance Company, paid compensation benefits to plaintiff at the rate of $49 per week for eleven weeks beginning on the date of the accident and continuing through August 19, 1971, as well as medical benefits of $809.35. Thereafter, payments were discontinued. In their answer to the suit defendents denied that further compensation or medical benefits were due plaintiff, pleading, inter alia, that no serious injury or aggravation of an injury occurred in the May 27, 1971, accident and that any injury complained of was actually a pre-existing condition of long-standing duration. For the arbitrary refusal to continue compensation benefits, plaintiff also seeks penalties and attorney's fees.
The trial judge rendered judgment for defendants, dismissing plaintiff's suit, and the plaintiff has appealed. We affirm.
The sole issue presented by this appeal is the correctness of the judgment of the trial court in denying the demand of plaintiff for workmen's compensation, together with statutory penalties and attorney's fees.
The accident of May 27, 1971, occurred when plaintiff, a truck driver for Prestressed, drove a cement batch truck off the roadway of defendant's premises into a ditch, causing him to hit his left knee on the dashboard of the truck. The accident was witnessed by one of defendant's employees who stated that plaintiff told him that he was not injured. However, the next day plaintiff reported to Dr. Gerald C. Keller, and the doctor observed some swelling and tenderness of the left knee. X-rays revealed no fractures or dislocations but showed some old degenerative arthritis and a screw in place in the distal femur. Since plaintiff had been a private patient of Dr. Keller, the doctor was aware of his having had previous surgery on the left knee. After conservative treatment of plaintiff, his knee improved and on June 3rd Dr. Keller sent him back to work. At that time the swelling had subsided and plaintiff was only experiencing mild tenderness of the knee. However, plaintiff could not work because of pain in the knee when he attempted to "double clutch" the truck he was to drive. He returned to Dr. Keller on June 7 and the doctor observed that though he walked with a mild limp, there was no swelling in the knee. There was also questionable mild subjective tenderness of the knee. Even though the doctor could not find any objective evidence of the injury persisting, he gave plaintiff the benefit of the doubt and sent him to an orthopedist, Dr. Daniel S. Sinclair. Dr. Keller last saw plaintiff on June 29 when he still found no objective evidence of injury to the knee. Inasmuch as plaintiff told him at that time that he was going back to Dr. Ray J. Haddad, Jr., of New *846 Orleans, he felt that it was unnecessary for him or Dr. Sinclair to see him any more for his injury.
Dr. Sinclair saw plaintiff on June 8, 1971, and at that time learned that plaintiff had previously undergone four operations on his left knee. The record reveals that both of the cartilages were removed in separate operations in 1966, a third operation was performed in 1967 to repair torn ligaments, and a fourth operation took place in 1968 to install an artificial ligament. Dr. Sinclair was of the impression that plaintiff had mildly aggravated his left knee in the May 27, 1971, accident. He further stated that there was no swelling, joint effusion, lacerations, abrasions or areas of ecchymosis which would suggest recent pathology. He felt plaintiff could resume the duties of a truck driver as of the date of this examination.
After a lengthy examination, the trial judge, whose Reasons for Judgment reflect great confidence in the doctor, also carefully interrogated Dr. Sinclair. This interrogation concluded with Dr. Sinclair's stating that in his opinion plaintiff's disability was no greater after this accident than before.
Notwithstanding the testimony of these doctors, the evidence shows that plaintiff had worked for his employer for approximately nine months without any difficulty with his knee, and both plaintiff and his father testified that he could not work after the accident.
As noted above, plaintiff on his own had seen Dr. Ray J. Haddad, Jr., a specialist in orthopedic surgery in New Orleans. A reading of his deposition, which was taken after trial and filed in evidence, shows that when he first saw plaintiff on June 4, 1971, there was no evidence of recent injury to the knee. He did not notice any fluid in the knee or evidence of any bruises. He stated he could not tell how much of plaintiff's problem was secondary to his injury of May, 1971, except for what plaintiff told him. Dr. Haddad thought most of plaintiff's knee problem was old and suggested a course of isometric exercises. On August 23, 1971, Dr. Haddad performed a fifth operation on plaintiff's knee in an attempt to give him more stability when his knee went from side to side. Dr. Haddad expressed the opinion that the Slocum transfer which had previously been performed was very loose and pulled out, so he completely took it down again and reattached it. Despite persistent questioning of counsel, the doctor would only say:
"A. Again, anyone who has this type of knee, if he has significant injury to the knee, certainly it can aggravate his unstable, diseased knee. I can't say what degree. At the time I saw him, I could not find evidence of acute trauma. All of it seemed to be of a chronic nature." (Deposition, p. 32)
The foregoing résumé considered, we concur with the trial judge that plaintiff failed to bear the burden of proving that the condition of his knee was related to this accident.
In a workmen's compensation suit, just as in any other civil case, the burden of proof is on the plaintiff to establish a causal connection between his injury and the resulting disability by a preponderance of the evidence. Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963).
LSA-R.S. 23:1317, in pertinent part, provides:
"* * * The court shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence, or which there are or have been objective conditions or symptoms proven, not within the physical *847 or mental control of the injured employee himself. * * *" (Emphasis added)
As noted from the absence of medical testimony, only the testimony of plaintiff and his father supports plaintiff's contention that the May, 1971, accident resulted in his disability. Plaintiff's own testimony concerning his disability resulting from the accident is the type of evidence referred to in the above statute, i. e., within the mental control of the employee himself, and is thus not competent. Additionally, such testimony should not be considered by the court when there is no conflict in the medical evidence. Thornton v. American Mutual Liability Insurance Company, 216 So.2d 910 (La.App. 1st Cir. 1968).
Though plaintiff correctly argues that a dormant physical weakness which antedates a work-related accident is not considered a bar to recovery within the meaning of the compensation law, he failed to prove that plaintiff's pre-existing condition was aggravated by the accident, thus causing the disability from which he suffered.
Plaintiff also relies heavily on the case of Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972), and Johnson v. Travelers Insurance Company, 284 So.2d 888 (La.1973), which are readily distinguishable from the instant case because the plaintiffs in each of the cited cases proved that their disability was accident related.
Defendants' refusal to pay plaintiff further compensation was justified and plaintiff is, therefore, not entitled to penalties and attorney's fees.
There being no error in the judgment appealed from, it is affirmed, at the cost of plaintiff-appellant.
Affirmed.