314 So.2d 507 (1975)
Oscar Ray TILLMAN
v.
HARTFORD ACCIDENT & INDEMNITY CO. and Baton Rouge Printing Co., Inc.
No. 10247.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
Rehearing Denied June 30, 1975.
Writ Refused September 26, 1975.
*508 Johnnie A. Jones, Baton Rouge, for plaintiff-appellant.
Gerald L. Walter, Jr., Baton Rouge, for defendant-appellee.
Before SARTAIN, ELLIS, and BARNETTE, JJ.
BARNETTE, Judge.
This is a suit under the Workmen's Compensation Act. The plaintiff, Oscar Ray Tillman was injured in the course and scope of his employment on July 7, 1972. As a result of the accident he lost by subsequent surgical amputation the distal phalanx and half of the middle phalanx of the ring finger of his left hand. He was paid compensation in accordance with the statute for twenty-three weeks at the rate of $41.60 per week, plus all medical expenses.
After returning to work he alleges that he was unable to continue due to intolerable pain as a result of his injury and residual effects. He brought this suit seeking, recovery of maximum compensation benefits based on the allegation of total disability to do work of any reasonable character. The predicate of his claim is that he is an unskilled workman and cannot compete in the labor market.
The trial court, with written reasons for judgment, found in favor of defendants, rejecting plaintiff's demands and dismissing his suit. The plaintiff has appealed seeking a reversal of that judgment and for judgment in his favor as prayed for.
The plaintiff, Tillman, was a regular employee of Kennedy Printing Company, but on the day of the accident he was in the employ of the defendant Baton Rouge Printing Company, Inc. as an employee on loan to operate a machine used in stapling pamphlets. On July 7, 1972 while so engaged he accidentally caused a wire staple to be driven into the ring finger of his left hand. He was then nineteen years of age.
The attending physician, Dr. Joe A. Morgan, an orthopedic surgeon, saw the *509 plaintiff on the day of the accident in the emergency room of a local hospital. Examination revealed "a compound intra-articular fracture of the middle phalanx at the distal interphalangial joint of that finger." The staple was removed surgically.
On July 21, 1972, the injured portion of the finger was removed by amputation. The stump healed satisfactorily but a tenderness developed at the tip of the amputation. This was diagnosed as neuroma. He was paid compensation until October 20, 1972, when he returned to work at Kennedy Printing Company where he continued to work until September 28, 1973.
During this period of employment Tillman continued under treatment by Dr. Morgan for the neuroma. He testified that during this period he was unable to do his work as well as before the accident. More specifically he testified:
"In '73 I decided that I was, it was My whole left hand is sort of weak and I can't do too much with it, so, in '73 I decided that I would quit work and go on back to school."
At this point in time he returned to Dr. Morgan for further surgery, October 1, 1973, to correct the neuroma.
Dr. Morgan explained the neuroma as pain on the amputation stump, saying:
"Neuroma pain means that when a nerve is cut, when a nerve is cut anywhere or injured, it will try to heal itself by reaching out with its fibers and they will form a little bulbous projection at the end of the nerve. If this is very close to the skin it will manifest itself as tenderness when it is touched, and give a shock like sensation. We have two nerves that are of importance in each finger, and he had some tenderness or neuroma formation of both of the nerves. This later required surgical revision of the painful neuroma.
Q Was that corrected, doctor, was that completely corrected?
A As I followed him after the third operation, the third operation was the one to correct the neuroma, I felt that generally the result that I wanted was achieved.
Q But, would he still have some tenderness in that thing?
A As I followed him after surgery he has continued to complain of some tenderness, but on objective examination there is very minimal tenderness.
Q But, there is some.
A Well, I don't think there is enough tenderness to really be a limiting factor in the finger, not like there was before the third operation. I feel at this point that there is not enough tenderness to warrant a fourth operation for correction of that. I feel that he has no more tenderness than is usual for a good amputation stump at this time."
The trial judge in his written reasons for judgment found in part as follows:
"The issues before this Court are the extent of the injury to plaintiff's finger, the duration of the disability and the extent to which plaintiff is handicapped in the competitive labor market. Plaintiff takes the position that he is totally and permanently disabled in that he will have difficulty performing activities which require maximum manual dexterity and in that he will be unable to compete on an equal basis in the labor market. Defendants, on the other hand, assert that plaintiff is entitled to be and has been fully compensated for the loss of the ring finger on his left hand.
"In support of his contention, Oscar Ray Tillman cites Melerine v. Brown and Root, Inc., 284 So.2d 809 (4th Cir., 1973). That case involved a mechanic's *510 helper who suffered an amputation of his thumb just below the distal joint. There was testimony to the effect that the injury did not preclude the plaintiff from doing the work of a mechanic, but it would impair him because of the pain suffered while doing the work. Articulating the rule that in order to be permanently and totally disabled because of pain, the pain must be of a substantial nature and must be more than a minor discomfort, Lavergne v. Southern Farm Bureau Casualty Company, Inc., 171 So. 2d 751 (3rd Cir., 1965) and the cases cited therein, the Court in Melerine held that the record clearly showed that plaintiff did, in fact, work in substantial pain.
"Although the rule expressed above applies to the present controversy, the facts herein are distinguishable. Oscar Tillman's job at the Baton Rouge Printing Company involved operating such equipment as the `stitching' and offset printing machines. On the trial, he testified that he still experiences pain in the left ring finger and that he is unable to operate the `stitching' machine as efficiently as before the accident. Dr. Morgan, however, testified that his examination reveals only minimal tenderness in that finger and it is his opinion that the plaintiff can handle his required tasks. He further testified that while there may be a slight loss of strength and efficiency in the left hand, this loss is also minimal and plaintiff's capability for the light lifting required in his job has not been significantly affected.
"La.R.S. 23:1317 provides the applicable rule that findings of fact in a workman's compensation case must be based on competent evidence, or where there have been objective symptoms proven, not within the physical or mental control of the injured employee himself. Toomer v. Highlands Insurance Co., 295 So.2d 844 (1st Cir., 1974). The evidence in the present case fails to show either the existence of substantial pain or the loss of strength and efficiency sufficient to handicap plaintiff in the competitive labor market. It is the finding of this Court, therefore, that plaintiff has failed to sustain his burden of proof that he is totally and permanently disabled within the meaning of the Workman's Compensation Act.
"It was stipulated by all parties that, at the time of the accident, plaintiff was employed by the Baton Rouge Printing Company, Inc., at such rate of pay where 65% thereof would entitle him to disability benefits in the amount of $41.60 weekly. Under La.R.S. 23:1221 (4)(c), for the loss of his entire ring finger, plaintiff would be entitled to a maximum of 65% of his wages for 20 weeks, or a total of $832.00. Plaintiff has received compensation for 23 weeks for a total of $956.80. He has thus received the full amount to which he is entitled."
The findings of fact and the judgment of the trial court are amply supported by the testimony. The appellant has not on this appeal brought to our attention any significant evidence which would suggest manifest error.
The liberal construction of the law in favor of the injured employee in workmen's compensation cases does not relieve the claimant of the burden of proof by a reasonable preponderance of the evidence. It is hardly necessary to cite authorities in support of this principle of law, but the following recent cases have applied it in factual situations similar to that presented here. Duplechain v. Air King Corporation, 306 So.2d 460 (La.App. 3d Cir. 1975); Bamburg v. Riley-Beaird, Inc., 305 So.2d 551 (La.App. 2d Cir. 1974); Blazier v. Georgia-Pacific Corporation, 301 So.2d 701 (La.App. 3d Cir. 1974); Toomer v. Highlands Insurance Co., 295 So.2d 844 (La.App. 1st Cir. 1974); White v. E. A. Caldwell Contractors, Inc., 276 So.2d 762 (La.App. 3d Cir. 1973).
*511 The issue in Duplechain was identical to the one presented here. The plaintiff lost by accidental amputation a portion of the distal phalanges of the ring and middle fingers of her right hand. She claimed total permanent disability. The testimony referred to in the opinion bears a striking similarity to that in this case. She was denied recovery for failure to sustain the required burden of proof.
Compensation of only $956.80 for the injury sustained by this young man seems inadequate when compared with awards of damage in tort cases generally. But this is one of the calculated situations which was thoroughly considered in the adoption of the Workmen's Compensation Statute. In all workmen's compensation cases, the workman gives up the chance of more substantial compensation for the certainty of recovery in every work related injury. The employer, on the other hand, gives up his right to certain defenses normally available to him in damage claims. If the statutory schedule for loss of a portion of a finger is too low, this is a matter which addresses itself to the Legislature.
We are fully cognizant of the fairly recent development in our jurisprudence of the concept of application of the total permanent disability provisions of the statute in those exceptional cases where, notwithstanding the fixed schedule of compensation, the employee can prove his total permanent disability.
This exception should be applied with caution and should never be used by the Courts as a subterfuge in an attempt to remedy what, in a particular case, might appear to be inequitable. There must be a clear and convincing proof by the claimant of his total permanent disability.
It is not necessary to enlarge on the findings of fact of the trial judge, and without so finding, we merely question whether this young man quit his employment because of the alleged disability, or to return to school as he indicated in his testimony.
We find, as did the trial judge, that the plaintiff has not discharged the burden of proof which the law requires of him.
For these reasons, the judgment appealed is affirmed at appellant's cost.
Affirmed.