BERTRAND, Judge.
William Dunman brought suit against The Kroger Company, his former employer, and its insurer, Employers National Insurance Company, for total and permanent disability workmen’s compensation benefits. The alleged disability arose out of an accident which occurred on September 24, 1973. Dunman appeals the trial court decision rendered in favor of defendants. We affirm the trial court’s decision.
Dunman worked as a truck driver for Kroger for some ten years. On September 24, 1973, while in the process of delivering goods for Kroger, Dunman stopped his truck to inspect the refrigeration system. He climbed up on his truck, slipped, and jumped to the ground. Dunman landed on his feet, which caused an injury to • his back. He was taken to a Dr. Drez for treatment, and was off wofk for approximately two (2) weeks. Dr. Drez, an orthopedist, diagnosed Dunman’s injury as a back sprain and discharged him on October 11, 1973. On October IS, 1973, Dr. Drez reported to Kroger and its insurer that Dunman was capable of doing the same work he had performed before the injury and Dunman had sustained no permanent injury. Dunman was discharged as cured on October 11, 1973.
Dunman was paid compensation benefits for the two weeks that he was incapacitated, and he returned to work for Kroger for an additional nine (9) months.
In June of 1974, Dunman quit Kroger, purchased his own truck, and began working for Dixie Transport Company as a truck driver, using his own truck and Dixie’s trailer. The work involved with Dixie did not include the lifting of heavy items for unloading that had been a regular part of Dunman’s job at Kroger. The work at Kroger was strenuous work for one man, but Dunman was entitled to assistance from store personnel. The income derived from working for Dixie was equal to or in excess of the income Dunman received from Kroger.
Several days before the trial, Dunman quit working for Dixie, bought his own refrigerated produce trailer, and began work *429 ing as an independent. Dunman hasn’t yet hauled with his new van. His expected income for this new work will be equal to or slightly in excess of that which he was receiving from Kroger,
Just prior to trial, Dunman, at his attorney’s request, consulted another orthopedist, Dr. George P. Schneider. This was the first time since his initial treatment with Dr. Drez that Dunman had gone to a doctor for his hack ailment. At trial the evidence disclosed that Dunman gave false information to Dr. Schneider with regard to the length of time he received treatment from Dr. Drez and the amount of time that he continued working for Kroger after the accident. Dr. Schneider testified that the history of an ailment related to him by a patient was an important diagnostic tool, and that if a false history had been given, such could change his diagnosis. Dr. Schneider further testified that subjective testing, i. e., reactions to pain by the patient, were an important part of his diagnosis that Dunman’s injury was caused by the accident in question.
Both doctors agreed that Dunman has a congenital defect in his back, a spondylol-isthesis. Dunman contends that the accident on September 24, 1973, rendered his condition symptomatic. He further alleges that as a result he is in constant pain, requires corrective surgery, and is unable to do essential work as a truck driver since he is no longer able to do any significant lifting without substantial pain. Therefore, Dunman contends that he is totally and permanently disabled within the meaning of the law.
In ruling in favor of the defendants, the trial judge stated:
“The evidence most damaging to plaintiff’s position is as follows.
1)The testimony of Dr. Drez, the treating physician, who saw plaintiff from September 25, 1973, the day following the accident, through October 11, 1973, when plaintiff was released to return to full work. He was of the opinion that plaintiff had suffered only a muscular strain of his lumbar muscles and that the injury had not caused an aggravation of the preexisting bony condition or any nerve damage because if it had, his back complaints would not have improved to the point that he was virtually asymptomatic by October 11, 1973. While acknowledging that if it were true that plaintiff has not had a pain-free day since the accident, he would agree that the injury rendered the spondylolisthesis symptomatic, but the medical probability is that plaintiff’s present complaints are not caused by the accident.
2) The fact that plaintiff did not consult a physician from October 11, 1973, until he was examined at his attorney’s request by Dr. Schneider ten days before the trial.
3) The testimony of Leroy Landrum, M. C. House, Paul Moreau, and Rodney Hoots, all friends of plaintiff, who together have seen plaintiff many times while working since the accident, and who saw no evidence and heard no complaints from plaintiff or any disability.
4) The fact that plaintiff has worked continuously as a truck driver since October, 1973, and has invested a large sum of money in the purchase of a truck and trailer.
5) Little, if any, evidence to support the conclusion that men engaged in the general field of truck driving, as distinguished from the work required of Kroger drivers, are required to do heavy lifting or heavy manual work.
6) Plaintiff’s answer 'went into business for myself’ with no mention of difficulty in doing the work, in answer to defendants’ interrogatory asking him for his reason in quitting work at Kroger.
7) Plaintiff’s application for employment submitted to Dixie, and in particular, his statement in the application that he was *430 physically capable of heavy manual work. His explanation of the reason for answering this question as he did was unsatisfactory. In fact, his response to the last question asked him at the trial, to the effect that he knew that he could do anything Dixie required of him as being the reason he filled out the application like he did, not only casts doubt on the degree of pain of which he complains, but is certainly an acknowledgment that he can work generally at least as a truck driver without substantial pain, even if not for Kroger.
Considering all of the evidence, plaintiff has failed to bear his burden of proving the essential elements of his case.
I cannot say that he has proved (1) that he suffers substantial pain or if he does it is related to the accident, and (2) that a substantial portion of the work required of men engaged in the general field of truck driving consists of more strenuous work than the work he admits he can perform without substantial pain.”
It is well settled that the decision of a trial judge, who has weighed and determined the amount of credibility to be given to each witness, is entitled to great weight and should not be overturned in the' absence of manifest error. The reason for this principle of review “is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koering Company, 283 So.2d 716 (La.1973). We find no manifest error in the trial judge’s conclusions.
The plaintiff in a workmen’s compensation suit has the burden of proof. Toomer v. Highlands Insurance Co., 295 So.2d 844 (1st Cir. La.App. 1974); Dupard v. M & C Construction Co., 312 So.2d 660 (4th Cir. La.App. 1975).
When two physicians, both qualified in the same specialty, have testified as to different conclusions regarding the patient’s condition, the attending physician’s testimony should be accorded greater weight. Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923 (3rd Cir. La.App. 1973). This is especially true in this case where the attending physician made his diagnosis on objective findings while Dr. Schneider used the subjective reactions of Dunman in making his diagnosis. Dr. Drez examined Dunman immediately after the accident on three separate occasions, while Dr. Schneider’s examination took place almost nineteen (19) months from the time of the accident. Additionally, Dunman related a false medical history to Dr. Schneider, which as Dr. Schneider testified at trial, could have altered Dr. Schneider’s findings.
The lay witnesses at trial were either friends or relatives of Dunman. One group testified that Dunman did seem to be in pain and that he complained to them of it. But another group, including the steward of the union in which Dunman was a member, testified that they saw no difference in Dunman’s physical condition since the accident and that Dunman had never complained to them about being in pain. We find that there was a reasonable factual basis for the trial judge’s determination that the testimony of lay witnesses did not establish that Dunman had been disabled as a result of the accident.
The trial judge determined that Dunman’s application for employment at Dixie (stating that Dunman did not have any physical limitations), could not be discounted. This was amply supported by the evidence.
Finally, the trial judge correctly concluded that the plaintiff failed to prove that lifting heavy items was a part of the general trucking profession. The evidence showed that Dunman, as well as a coworker at Kroger with no back problems, *431 have been employed as truck drivers with Dixie for the same or more pay. No evidence Was presented to show that working as a truck driver with no lifting duties was a specialized field of trucking.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.