GULOTTA, Judge.
This is an appeal from a judgment dismissing plaintiffs’ claim for damages and injuries sustained by Henry L. Chapell as well as for workmen’s compensation benefits paid as a result of an accident occurring on May 4, 1964.
Henry L. Chapell,[1] hereinafter designated as Chapell, was operating a crane rented by his employer from Sidney Breun, d/b/a Atlas Erection Company. This suit is directed against Breun and its liability-insurer, Northern Assurance Company of America.
While in the process of “blocking up” the outriggers on a 35 ton truck crane preparatory to putting it in operation, the crane turned over on its side causing Cha-pell to be injured while attempting to jump from the cab of the crane.
It is plaintiffs’ contention that a 20 foot jib extension added to the 100 foot boom and heavy angle iron welded along the length of the boom caused it to be top heavy. Plaintiffs assert that the crane became an inherently dangerous instrumentality as a result of this modification, and the additional weight of the boom caused the crane to topple resulting in Chapell’s injuries. Defendants, on the other hand, contend that the sole and proximate cause of the accident was the negligent operation of the crane and improper placing of the blocks under the outrigger, a procedure used to make the crane stationary and stable preparatory to its use. Particularly, defendants aver that Chapell failed to extend the two left outriggers in a locked position supported by blocks before moving the boom of the crane to the left side as a balancer in order to elevate the right side *245 of the crane to allow blocks to be placed under the two right extended outriggers. Moreover, Chapell improperly and negligently swung the boom of the crane to the left over the front end of the truck crane or cab rather than over the rear which is equipped with proper suspension for this purpose.
The trial judge rendered judgment in favor of defendants[2] and found Chapell guilty of contributory negligence in that he had knowledge that the boom had been, reenforced with angle iron and proceeded to tilt the crane thereby not exercising the proper caution required, “in executing a very dangerous feat”.
The issue presented to us is a factual one requiring a finding of manifest error for reversal. The record reflects a parade of experts by plaintiffs and the defendants, each setting forth the cause of the crane toppling. Needless to say, the testimony of these witnesses is in conflict. The trial judge apparently accepted the explanation of defendants’ experts and concluded that operating the boom over the front without sufficient chocking caused it to tilt.
Plaintiffs offered the testimony of Tillman DeSoto, a crane operator with five years experience and an oiler on the crane at the time of the accident. He stated that the procedure followed in this instance was normal and usual and what caused the crane to tilt was the modified boom which was too heavy. It was his expert opinion that Chapell was not operating the boom carelessly. Furthermore, he indicated the left front and rear outriggers were both out and the rear one was blocked with the safety pin locked in place. Chapell had swung the boom only about five degrees to the left and had not even cleared the cab (the front) of the truck when the crane wobbled back and forth and toppled.
Arthur Nunez, another of plaintiffs’ experts and a licensed operating engineer, corroborated the testimony of DeSoto to a large extent. However, he added that the ground angle of the boom was 60 or 65 degrees which is within the proper margin of safety when the operator is undertaking the procedure of blocking. In answer to defendants’ suggestion that it would have been proper and safer to use a jack to elevate the outrigger for blocking rather than tilting the crane by moving the boom, Nunez said that Chapell used the normal and usual method. Moreover, Nunez stated he did not see a jack on the crane. While Nunez did state that it would have been safer to put blocks under the left front outrigger before moving the boom, nevertheless he was of the opinion that the modified and extended boom with the additional weight of the angle iron was too heavy for the rig. His opinion was that if the boom were not too heavy, it could have been moved without tilting over, even without outriggers.
We note on rebuttal he volunteered, and the court apparently placed a great deal of weight on his opinion, that any crane operator would have seen the addition of the angle iron and Nunez emphasized that he would not have operated the crane with this additional weight on the boom. The trial judge relied on Nunez’s testimony to conclude that Chapell should have noted this and should have taken the proper precautions but did not.
The testimony of additional expert witnesses offered by plaintiffs — that of Larry D. Spears, Jr., an ironworker at the time of the accident; Roland J. DeRoche, also an ironworker; and Dennis Hayes, a mechanical engineer and marine surveyor— was substantially the same as that of De-Soto and Nunez relative to the cause of the accident. Hayes testified further that according to the amended manufacturer’s *246 chart,[3] even if outriggers were not out and the boom was swung 10° to the left and was at a 60° ground angle, the crane would not topple. However, with an added weight of 1,500 pounds of angle iron, as in this case, it would topple. He was uncertain as to the stability of the crane if the boom were operated at a 40° ground angle and moved three to five feet to the left. There is no evidence that the manufacturer’s chart was in the cab at the time of the accident. Moreover, we might add, at this point, that the trial judge was not afforded the benefit of Chapell’s testimony as he had died on June 20, 1968, prior to the date of the trial.[4]
The defendants offered the testimony of Robert D. Gonsoulin, a crane operator and master mechanic for Atlas Crane Rentals. He testified that the left rear outrigger safety locking pin was not in place and according to photographs taken at the scene shortly after the accident, neither of the two left outriggers were extended before the crane toppled. Gonsoulin added that it is improper to operate the boom over the front of the crane as Chapell was doing. His opinion was that the boom should be operated over the rear because the additional weight, sturdier suspension and tandem tires at the rear allow more stability. He explained that proper blocking procedure requires the outriggers to be extended and safety pins to be locked in place to secure the outriggers. Blocks are then placed under each outrigger to within an inch of the extended beam. The jack is then used to take the slack out, and the remaining blocks are placed under the outrigger. The boom is next used to gain more leverage in order to tighten the blocks up. After one side is blocked properly, a jack is used to block up the other side. He cautioned that the crane is never tilted without blocks being secured under the outriggers. Gonsoulin added that this particular crane was equipped with a jack and emphasized that the crane had been rented out on other occasions and had never tilted. It had been operated for approximately 10 months a year and was equipped with a 160 foot boom. This is 40 feet longer than the length of the boom in question. His opinion was that the additional boom and angle iron weight had nothing to do with the crane turning over. The testimony of Sidney A. Breun, defendant, corroborated to a large extent Gonsoulin’s testimony.
The testimony of Clem D. Binnings, a civil engineer and general contractor, engaged in heavy construction who had 30 years experience with cranes supported the opinions of Gonsoulin and Breun. It was his expert opinion that the additional weight of the angle iron had nothing whatsoever to do with causing the accident. In assigning the cause, he stated “so I would say that the two errors were in operating the machine with the boom over the cab and in not blocking the outrigger before swinging the boom.”
An analysis of the record supports the factual determination of the trial judge. It is our opinion that the negligent actions of Chapell was the proximate cause of his injuries. Accordingly, we find no manifest error.
While plaintiffs seek to repudiate the time honored and deeply imbedded doctrine of contributory negligence in favor of a comparative negligence concept, this case does not present a meritorious basis for consideration of this question. This case does not present a comparative negligence factual situation; hence, it is not an appropriate vehicle upon which to seek repudiation.
Plaintiffs suggest that the reasoning in the case of Chaney v. Brupbacher, 242 So. 2d 627 (La.App. 4th Cir. 1970) is applica *247 ble to the instant case. However, unlike Chapell herein, in Chaney it was determined that the employee crane operator was free from any contributory negligence. In contrast, it is our opinion that Chapell’s negligent manner of operating the crane was the proximate cause of the accident and resultant injuries. Therefore, the question of negligence of Chapell is determinative of this case and not whether the employee was required to use defective equipment as was concluded in Chaney.
In the absence of manifest error, the judgment is affirmed.
Affirmed.

. Mary Goodsell Chapell, widow of plaintiff, individually, and as duly qualified representative of the minor, Michael Chapell, Esther Chapell and Henry L. Chapell, III, an emancipated minor were substituted as parties plaintiff by reason of Chapell’s death from causes unrelated to the accident herein.

. An intervention was filed by Charity Hospital of Louisiana at New Orleans seeking payment for medical services rendered to Chapell as a result of the ac-ciclent, as well as attorneys’ fees. However, no appeal was taken by Charity Hospital from the judgment dismissing plaintiffs’ suit.

. A chart supplied by the factory which usually is found in the crane. The chart indicates the safe weight that can be lifted at different ground angles and with different working radii.

. Date of the trial was December 1 and 2, 1970.