345 So.2d 123 (1977)
Laverne PEARSON
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY and Shell Chemical, Inc.
No. 11216.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
Rehearing Denied May 9, 1977.
Writs Refused June 30, 1977.
*124 Gordon M. White, Baton Rouge, for plaintiff & appellant.
Gerald L. Walter, Jr., Baton Rouge, for defendant, Hartford & H. E. Wiese, Inc., appellees.
William A. Norfolk, Baton Rouge, for defendant The Travelers Ins. Co. & appellee.
Before ELLIS, CHIASSON and PONDER, JJ.
CHIASSON, Judge.
The plaintiff-appellant, Laverne Pearson, was employed by H. E. Wiese, Inc. (Wiese), third party defendant-appellee, as a maintenance millwright. Wiese had a contract with the Shell Chemical Company (Shell) under which Wiese performed routine maintenance work at Shell's Geismar plant. As the result of an industrial accident at the Shell plant on August 2, 1968, Pearson lost the distal phalanges of the first three fingers on his right hand.
To recover for this injury Pearson filed suit seeking damages in tort from Shell or, in the alternative, workmen's compensation benefits for total permanent disability from Wiese's insurer, the Hartford Accident & Indemnity Company (Hartford), defendant-appellee and third party defendant-appellee.
Hartford answered alleging payment of all benefits due Pearson as workmen's compensation and intervened asking that it be recognized as subrogated to Pearson's rights against Shell to the extent of its workmen's compensation payments.
Shell filed a peremptory exception alleging that Pearson's sole remedy as to Shell was for workmen's compensation.
Pearson filed supplemental and amending petitions adding as defendants in tort Jim Champine, an employee of Shell, now deceased, and his insurer, The Travelers Insurance Company (Travelers), defendant-appellee and third party plaintiff-appellant. Pearson's suit against Shell was dismissed on his own motion.
Travelers filed a peremptory exception alleging prescription. The District Court rendered judgment sustaining the exception and dismissing Pearson's suit. Pearson appealed this decision. This Court affirmed the dismissal, La.App., 263 So.2d 430 (1st Cir. 1972). The Louisiana Supreme Court on Writ of Certiorari, or Review, reversed that decision and remanded the case to the District Court for trial on the merits, La., 281 So.2d 724 (1973).
Travelers answered Pearson's petition denying negligence on the part of its insured and, in the alternative, pleading contributory negligence on the part of Pearson. Travelers also filed a third party petition alleging that under the terms of the maintenance contract, Wiese has a duty to defend Shell and its employees in tort suits arising under the agreement. Travelers contends that Wiese and its insurer, Hartford, are liable to Travelers for the cost and expense of defending this tort action.
Wiese and Hartford answered the third party petition alleging that under the terms of the contract there is no duty to defend where the negligence of a Shell employee is alleged to be the sole cause of the injury.
Following a trial on the merits the District Court rendered judgment in favor of Hartford and Travelers and against Pearson, *125 dismissing Pearson's suit, and in favor of Hartford and Wiese and against Travelers, dismissing Travelers' third party demand. This appeal has been brought by Pearson and Travelers from the judgment dismissing their demands. Neither written nor oral reasons for judgment have been provided by the District Court.
There are two findings of fact and law which would support the dismissal of Pearson's suit against Travelers. First, a finding that Pearson's injury was not caused by the negligence of Champine. Second, a finding that while Champine's negligence was a cause of Pearson's injury Pearson was also contributorily negligent.
Based on the evidence contained in the record we find the following:
The accident upon which this suit is based occurred when Pearson attempted to clean the intake fan-housing of a large gas turbine. The turbine was out of service at the time of the accident. To prevent internal damage to the turbine as it cooled, the intake fan was being driven by a helper turbine at approximately 600 RPM. The electric motor which normally turned the fan at 5 to 10 RPM during cooling had frozen and had been removed for testing.
While the turbine was down it was suggested by James Pujals, a representative of the turbine manufacturer, Westinghouse Electric Corporation, that the turbine intake should be cleaned. Champine, the Shell employee in charge of the work on the turbine, instructed Pearson and three other millwrights to clean the intake.
There is considerable disagreement as to what the cleaning instructions were and as to when they were given. It is clear however, that Champine was negligent in either ordering or allowing the millwrights to enter the turbine while the fan was in motion and that this negligence was a cause of the accident. When the accident occurred, at least two people were attempting to determine when the turbine could be stopped and blocked so that it could be safely cleaned.
We are aware of and in agreement with the jurisprudence which holds that an employer who places his employees in a position of undisclosed danger is liable to the employee who is injured thereby. There is also a rule however, that an employee who exposes himself to a known danger assumes the risk of such exposure and is guilty of contributory negligence if he suffers injury as a result thereof. Swilley v. American Fire & Casualty Company, 148 So.2d 157 (La.App., 1st Cir. 1962); Pfister v. Phoenix of Hartford Insurance Company, La.App., 290 So.2d 362 (4th Cir. 1974).
It is apparent from Pearson's testimony that he was fully aware of the danger of attempting to clean the turbine while the fan was in motion and that he accepted the inherent risk.
The plaintiff contends that the test for contributory negligence in the employer-employee relationship was set forth in Chaney v. Brupbacher, 242 So.2d 627 (La.App., 4th Cir. 1970). This case and several others were discussed in Pfister v. Phoenix of Hartford Insurance Company, supra, pg. 365.
In distinguishing these cases the Court said:
"Plaintiff relies principally on Chaney v. Brupbacher, La.App., 242 So.2d 627; Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133; Hall v. Hartford Accident & Indemnity Co., La.App., 278 So.2d 795; and Boure v. New Orleans Public Service, Inc., La.App., 255 So.2d 776, to refute the contributory negligence.
"In Chaney the decedent employee was electrocuted when the boom of a crane, which was being used to assist in the unloading of steel beams, came into contact with a high voltage power line located over the work yard. The corporate vice-president had directed that the crane be moved from its original position to a position closer to the job site and closer to the wire. Contact was made with the wire when the decedent was walking away from the crane, pulling on the jib line to bring it down to attach to a beam intended to be moved. Contributory negligence was not appropriate in this case in *126 that the deceased did not have full knowledge of the danger of the situation and could therefore not be said to have assumed the risk. By directing the moving of the crane, the defendant vice-president had created the dangerous situation and had a greater appreciation of the risk than the deceased.
"The plaintiff in the Langlois case was injured by breathing gas fumes that escaped from the defendant's premises. The plaintiff was a fireman sent on a rescue mission to a place adjacent to the defendant's chemical plant. The defendant pled contributory negligence and assumption of risk in that plaintiff did nothing to protect himself from breathing the fumes. The evidence established that plaintiff had received training for working in areas contaminated with gas and had been taught the nature of the risks involved as well as the proper use of the safety breathing equipment which was at his disposal at the time of the accident and he chose not to use. The court stated that contributory negligence was not a defense because original negligence on the part of the defendant was not present and the defendant was strictly liable. Although the plaintiff was more knowledgeable than most about the nature of exposure to gases, the court held that he had not assumed the risk. The dangerous condition did not emanate from the site of the rescue mission, but came from the adjoining property. The plaintiff not only encountered the gas at the rescue site but in the fire truck returning from the mission and later at the firehouse. His exposure to the risk in the line of his duty was minimal.
"Justices Hamlin and Summers both wrote dissents to the majority opinion stressing that the plaintiff had assumed the risk. Plaintiff knew upon leaving the firehouse that he was called to assist in a rescue mission made necessary by gas escaping from an unknown source. Upon arriving at the scene the gas was immediately apparent. It could be seen and plaintiff's eyes began to water, his throat tickled and he started coughing. He had been trained that when encountering gas, especially gas of an unknown type, he was to assume the worst and take precautionary measures to guard against being overcome. When he experienced the reactions noted, it became incumbent upon him to use an available air pack for his protection.
"The Hall case involved an injury to the plaintiff when a motorcycle wheel which he was assembling exploded as he inflated the tire. In the course of assembling the wheels, plaintiff mounted tires on the wheels and inflated them to properly seat the tire. He was instructed to inflate them at a pressure of 40 to 45 p. s. i. although the recommended pressure for actual use was 15 p. s. i. The inflating station used for this purpose delivered a maximum pressure of 100 p. s. i. The service hose from the air compressor was fitted with a gauge that registered the internal pressure of the tire being inflated only when the button controlling the air flow was released by the operator. Negligence was established on the part of the employer for providing an inadequately designed gauge that did not constantly register the internal pressure of the tire. While plaintiff could have periodically released the button and checked the pressure of the inflating tire, the court felt that the margin between the pressure required to seat the tire and the pressure at which the wheel assembly separated was too small to be a safe one. The ultimate strength of the wheel assembly was only approximately twice the expected load. The court felt that a ratio of at least four to one would be necessary under the circumstances. These were factors within the control of the defendant and should have been known by him. On the other hand, plaintiff neither created and maintained the unsafe situation nor was he imputed with knowledge that it existed. Under the circumstances, plaintiff's actions were not negligence on his part.
"The final case cited by plaintiff to refute contributory negligence is Boure v. *127 New Orleans Public Service, Inc. The plaintiff sued Public Service for injuries he received when the hose to a spray painter he was operating came in contact with a high tension wire. Plaintiff was painting the underside of a new bridge in close proximity to the wire which ran under the bridge at a right angle. The majority court determined that Public Service had notice of the work going on so close to the wire. It was aware of the danger of the situation and had offered to de-energize the wire while work was progressing in that area. In the opinion of the court, the offer to de-energize the line was insufficient to exculpate the defendant of negligent conduct. The court further reasoned that the plaintiff was not guilty of contributory negligence. While the plaintiff was aware of the line under him, he still could not have prevented the occurrence of the accident, for it was not attributable to a lack of knowledge or the failure to take adequate measures to protect his safety. He had no control over his employer, the location where he was directed to paint nor any request for Public Service to de-energize the line. Further, the responsibility for keeping the hose away from other objects while he was painting was that of his helper.
"These cases are clearly distinguishable from the present case. In Chaney and Hall the court found that the plaintiffs did not possess the necessary knowledge of the danger or voluntarily assume the risk. In both cases, the employer had created the dangerous situation and possessed a knowledge of the danger superior to that of the employee. In the present case the plaintiff fully realized the risks attached to the job and realized them more than the defendant. He had the requisite knowledge of the circumstances to voluntarily assume the risk. "The court felt in Langlois that the risk involved was only minimally related to the plaintiff's job. The court seemed to say that only in the line of duty could a situation present itself wherein the plaintiff fireman could have assumed the risk. The danger encountered by Mr. Pfister in the present case was clearly related to the duties of his job.
"Finally, the facts in the Boure case lack the necessary ingredient of voluntary assumption of the risk. While the plaintiff was aware of the danger the presence of the high power line created, the court found that he had no control over the situation. He could not, therefore, have assumed the risk. The facts of the present case show that Mr. Pfister not only appreciated the danger of the situation but tried to remove that danger. However, he cut his efforts too short. After his complaints were made in the meeting with Mr. Wuescher, he continued to work in the same unsafe conditions and did not seek further relief from Mr. Ward."
Two additional cases which might be viewed as supporting the plaintiff's contention are Galloway v. Employers Mutual of Wausau, La.App., 286 So.2d 676 (4th Cir. 1973) and O'Keefe v. Warner, La.App., 288 So.2d 911 (1st Cir. 1973).
In Galloway the plaintiff slipped on a piece of scrap metal as he stepped over an exposed moving worm gear. His pants caught in the gear and in a matter of seconds, his entire penis was traumatically and totally amputated.
In affirming a jury's determination that the plaintiff was not contributory negligent the majority of the Court stated:
"Since there has always been and always will be a plea of contributory negligence in these third party tort actions against fellow employees, it may be well to look a little further into the concept. If a highway repairman were to be told by his boss to work in the open highway among fast-moving vehicles without protective barriers, etc. the workman should have `better sense' than to do so. If an electrical lineman were told by his boss to work on energized high voltage wires without his protective gloves, he ought to have `better sense' than to do so. If a workman performs his job in the face of an *128 obvious danger, then he is contributorily negligent. But he is not to be judged as contributorily negligent just because he fails to stop, to analyze the possible alternatives and, with some superior wisdom, calculate the relative advantages and disadvantages of these alternatives before he acts. In other words, if the safe alternative is as readily available and as obvious to the workman as is the danger of not choosing it, then the workman is guilty of contributory negligence in performing the dangerous task."
It appears, therefore, that the majority in Galloway concluded that the danger inherent in stepping over an exposed worm gear while it was in motion was not obvious and that the plaintiff had no readily available alternative. In his dissent Judge Samuels found the plaintiff contributorily negligent because the inherent danger was obvious and because there was a readily available alternative.
In O'Keefe the plaintiff was injured when a crane he was operating tipped over because of a defective condition, a stripped or partially stripped gear which made it impossible on occasions to keep the boom from swinging to the side. The Court on appeal concluded that the defendants had failed to prove contributory negligence or assumption of risk on the part of the plaintiff.
In the present case we find that the danger was obvious and known to Pearson and that an alternative, waiting until the turbine was stopped and blocked before cleaning it, was readily available.
Under these facts we conclude that Pearson was contributorily negligent and therefore barred from recovery.
Pearson contends that as a result of the accident he is totally and permanently disabled within the meaning of the workmen's compensation law. A skilled worker is totally and permanently disabled when his injuries prevent him from performing work of the same or similar nature. Denoux v. Hartford Accident & Indemnity Company, La.App., 336 So.2d 268 (1st Cir. 1976). Following his injury Pearson worked as either a millwright or a millwright foreman for approximately five years. Pearson quit work as a millwright only after he had sustained a second unrelated injury. While Pearson did have some minor difficulty in performing some of the activities of a millwright, he was still able to perform the duties of a millwright prior to the second injury.
We are aware of the development in our jurisprudence of the application of the total permanent disability provisions of the workmen's compensation statute in those exceptional cases where, notwithstanding the fixed schedule of compensation, the employee can prove total permanent disability. This exception should be applied with caution and only where there is clear and convincing proof by the claimant of his total permanent disability. Tillman v. Hartford Accident & Indemnity Company, La.App., 314 So.2d 507 (1st Cir. 1975). There has been no such proof in this case.
The contractual provision which forms the basis for Travelers' third party demand provides:
". . . Wiese shall defend and indemnify Shell, its employees and agents against all claims of and liability to third parties (including, without limitation, all employees of Shell or Wiese and all of their subcontractors and their employees) for injury to or death of persons or loss of or damage to property arising out of or in connection with the performance of this contract, except where such injury, death, loss, or damage has resulted from the negligence of Shell without negligence or fault on the part of Wiese or any of their subcontractors, in which case this clause shall not apply, and further provided that where such injury, death, loss, or damage has resulted from the contributory negligence of Shell, Wiese's responsibility for that portion of the claim attributable to Shell shall be limited to $250,000 each person and $500,000 each occurrence for bodily injury and property damage limits of $100,000 each accident and $100,000 *129 aggregate. Wiese shall defend all suits brought upon such claims and pay all costs and expenses incidental thereto, but Shell shall have the right, at its option, to participate in the defense of any such suit, without relieving Wiese of any obligations hereunder."
The suit filed by Pearson was based solely on the negligence of Champine, an employee of Shell. Under the terms of the contract there is no duty to defend where the suit is based solely on the negligence of Shell or its employees.
For the above reasons, the judgment appealed from is affirmed. Cost to be paid in equal proportions by Laverne Pearson, plaintiff-appellant, and Travelers Insurance Company, third party plaintiff-appellant.
AFFIRMED.