SAMUEL, Judge.
Plaintiff filed this suit against Dave L. Poindexter, Walter G. Alee, Jr., Causey E. Gram, Jr., and John McKee, as executive officers of his employer, Amstar Corporation, seeking damages for injuries sustained when he fell at Amstar’s sugar refinery while attempting to free his feet from a sticky substance which had spilled on the floor. He later added two other defendants, Eiler T. Lichenstein and James Vlady-ka, alleging them to be executive officers also.
Defendants answered, and those defendants named in plaintiff’s original petition filed a third party demand against Continental Casualty Company as their liability insurer. Amstar, plaintiff’s employer, intervened to recover workmen’s compensation benefits and medical expenses it paid on plaintiffs behalf. Continental later made an appearance by amended answer and assumed the defense of the third party plaintiffs-defendants.[1] The defendants added by amended petition are not insured by Continental.
After a trial on the merits, there was judgment dismissing plaintiff’s suit against all defendants. Plaintiff has appealed.
Plaintiff was injured in that portion of Amstar’s sugar refinery known as the pan-house. He occupied the position of pan-house operator, and was generally in charge of supervising and maintaining the production processes designed to take place in the panhouse.
The panhouse is a ten-story building in which raw sugar is converted in several stages to granulated sugar. On the seventh floor of the building the raw sugar is crys-talized in large pans, and the material is then dropped by gravity from these pans into mixers on the sixth floor, where centrifugal force is used to separate syrup from sugar. As the granulation process continues the material then drops to each of the floors between the fifth and the first. The granulated sugar is placed in holding bins on the first floor.
Plaintiff’s position required him to oversee the operation of the entire process in the panhouse, during the course of which he traveled from floor to floor. He operated machinery, monitored gauges, and did whatever was necessary to continue the process.
The night before plaintiff was injured a major spill of raw material occurred on the fourth floor of the panhouse. This spill was caused by painting contractors who had worked in the refinery the previous day and used plywood to cover the openings in the large pipes through which the crystalized sugar is dropped from the seventh to the sixth floor. At this point in the process, the raw sugar only has been crystalized and the syrupy portion of the mixture has not been separated. This mixture, sometimes called filmass, is a very thick and sticky molasses-like substance.
The blocking of the aperture in the pipe with plywood by the painters was not visible to the workers in the panhouse in the absence of an inspection of the process area. Although it was plaintiff’s responsibility to determine when the filmass safely could be dropped, he did not make such an inspection. Consequently, after he obtained nor *416 mal readings from various gauges, he ordered the filmass dropped from the seventh to the sixth floor. When the filmass dropped, the plywood prevented its normal passage to the sixth floor and it flowed over the sixth floor machinery and dropped, unobstructed by flooring or other structure, to the fourth floor where it resulted in an extensive spill.
Filmass is not brittle and it cannot be chipped away. Due to its consistency, it cannot be shoveled. Consequently, the only accepted method of cleaning a filmass spill is to wash it with hot water and flush the residue into drains. This process was estimated to take from two to three weeks.
Plaintiff returned to work in the pan-house about 24 hours after the spill. Gauges indicated it was necessary to add lime, an anti-bacteria agent, to the mixture and to do this he attempted to walk to a lime mixer located on the fourth floor. He had not added lime on the day of the spill because the floor was too wet and sticky for safe walking. However, the next night plaintiff thought the filmass had hardened enough so that he could walk on it to get to the lime mixture. As he proceeded in that direction it became obvious to him the fil-mass was still too soft for walking. He attempted to turn and retrace his steps, but he became stuck in the mass, causing him to fall and injure his right hip.
The trial judge’s Reasons for Judgment show he found the injury in suit was caused by plaintiff’s own negligence and that plaintiff had assumed a known risk when he walked on the dangerous spill to reach a lime mixer. There is ample evidence in the record to sustain this finding. The lime mixture on the fourth floor is part of what the witnesses called “the automatic system.” There was another spot in the production process, on the third floor, where lime could be added manually when the automatic system was not functioning properly. When the automatic system was in operation, lime was added to the process approximately three times every eight hours; when the automatic system malfunctioned, as it apparently frequently did, lime was added manually on the third floor at intervals which ranged from one hour to one hour and a half. Although denied by plaintiff, other evidence shows lime was maintained on the third floor continuously for use in the event the automatic system malfunctioned. Plaintiff admitted lime was stored on the premises and he could have sent the utility man for some, but he did not do so.
In addition, plaintiff testified he knew he would have to walk in the spill in order to put lime in the system on the fourth floor. He also stated that when confronted with a situation which he believed to be unsafe he should discuss the matter with his foreman before acting. But he admitted no such discussion ever was had relative to the accident in suit. Such a request appears to have been unnecessary because, as we understand the record, he had the authority to make that decision on his own. In short, plaintiff had a perfectly acceptable alternative and safe method of adding lime to the granulation process by going to the third floor, but instead he voluntarily chose to proceed across the dangerous spill of fil-mass to place the lime in the system at the fourth floor lime mixer. He was not ordered to take the dangerous alternative and there is no evidence to indicate the safer alternative was not available to him in any way.
Plaintiff relies on the reasoning and conclusion of this court in Chaney v. Brupbacher,[2] in which we held that a workman’s superior cannot simply create or permit a danger, send a workman into that danger with a warning, and escape liability on the basis of the workman’s contributory negligence by merely going into the dangerous situation. This court stated a workman must not be placed in the position of either telling his superior how to operate the job or terminating his employment.[3] In the present case, plaintiff was not faced with such a “perform or quit” alternative.
*417 Plaintiff began his employment at Ams-tar Corporation on September 19, 1947 and worked continuously to the date of his accident. A substantial portion of that time was spent in the panhouse, where he worked as a panhouse cleaner, a utility pan-house operator, and finally a full-time pan-house operator. During the course of his years of experience, he became thoroughly conversant- with the operations of the pan-house and fully knew the availability of the third floor lime inlet. By choosing to walk over the spilled filmass instead of descending one floor to place lime in the system at the alternate site, plaintiff knowingly assumed an obvious risk and failed to exercise that degree of care for his own safety expected of a normally prudent person.[4]
There are admittedly factual contradictions between the evidence presented by plaintiff and that presented by defendants. Some of these conflicts resolve themselves to questions of credibility, which is peculiarly within the province of the trial judge. It suffices to say there is nothing in the record to indicate the trial judge violated the broad discretion afforded him in making his factual findings.[5]
In view of the negligence and voluntary assumption of a known risk on plaintiff’s part, a discussion of defendants’ alleged negligence is unnecessary. The trial judge was correct in his holding, and his judgment must be affirmed.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. Consequently, the original defendants dismissed their third party petition against Continental.

. La.App., 242 So.2d 627.

. See also O’Keefe v. Warner, La.App., 288 So.2d 911.

. See Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 84 So.2d 445.

. See Canter v. Koehring Company, La., 283 So.2d 716.