377 So.2d 859 (1979)
Bob R. RICHARDS
v.
FARMERS EXPORT COMPANY et al.
No. 10306.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 1979.
On Rehearing November 12, 1979.
John Swanner, Seale, Smith & Phelps, Baton Rouge, for defendants-appellees Troutman, Ryckegham, Smith and Champagne.
George M. Papale, Knight, D'Angelo & Knight, Gretna, for plaintiff-appellant.
*860 Gary T. Breedlove, Francipane, Regan & St. Pee', Metairie, for third-party defendant-appellee Employers Mut. Liability Ins. Co. of Wisconsin.
Before STOULIG, SCHOTT and BEER, JJ.
SCHOTT, Judge.
Plaintiff has appealed from a judgment dismissing his suit against supervisory personnel for damages arising out of an injury sustained on the job. The judgment was based upon a jury verdict returned on special interrogatories finding that the four defendants were negligent but that plaintiff was contributorily negligent. The principal issue raised by plaintiff is that the facts and law do not support the defense of contributory negligence.
Plaintiff was employed as a general laborer by Farmers Export Company. The four defendants were Howard Troutman, the general manager of the company, William Van Ryckegham, the plant superintendent, Nathan Smith, plaintiff's foreman, and Leon Champagne, a co-worker. The company was engaged in the operation of a grain elevator with all of the usual related activities, including loading and unloading railroad cars. In this connection, the company maintained its own railroad tracks inside the premises and a "dinky" or small locomotive. On the day of the accident plaintiff's foreman, Smith, ordered Champagne, plaintiff and four other men to repair a gap in the rails on the property. Champagne was not plaintiff's superior but had done railroad work, including rail repair work, for 21 years before coming to work for Farmers Export Company and was regarded as the principal rail repair man for the seven years he worked for Farmers Export. Thus, he was put in charge of this work even though he was not technically the supervisor or foreman of plaintiff and the other men in the strict sense.
Champagne sized up the problem and decided on the proper solution. He would hook onto the dinky a 20-foot spare rail which was in a stack near the main building and drag it out to the point on the rails where the gap was located. There were two sets of tracks leading from the main building and circling the property and the gap was in one of the inside tracks. The dinky took the outside tracks, and Champagne's plan was to have the men move the spare rail from the outside tracks over to the two inside tracks and there use the spare rail as a battering ram to push the defective rail into place. When he set out on the project the usual operator of the dinky was off and plaintiff, next in line, operated the dinky for the group. When they arrived at the location of the job they released the spare rail from behind the dinky, and while all of the men were in the process of lifting the spare rail plaintiff's back was injured.
Plaintiff's general theory of recovery is based on the failure of defendants to supply him with a safe place to work. More specifically, he charged them with negligence in failing to provide him with proper equipment so as to avoid the hazard of manual lifting which caused his injury; to conduct adequate safety instructions which would include the proper method of group lifting heavy objects; and to properly train plaintiff in railroad maintenance work. Plaintiff offered evidence that the use of rail tongs might have prevented his injury and that this is standard equipment in the railroad industry for handling rails.
As with any jury verdict, we can only speculate as to what led them to their conclusions. However, the evidence was overwhelming that Champagne was a qualified railroad repair man and that all of his superiors were justified in delegating responsibility to him to perform what seemed to be a rather minor repair job. That being so, the jury may have concluded that the negligence common to all of the defendants was in their failure to have the railroad tongs available for this work or, perhaps, their failure to teach plaintiff how to lift heavy objects. But they must have concluded that plaintiff did not act as a reasonably prudent person since he was an experienced laborer, had undoubtedly lifted heavy objects *861 during all of his working life and either stretched his own capacity or put himself in the wrong position, thereby committing contributory negligence and barring his own recovery.
Plaintiff contends the defense of contributory negligence was not available to defendants as a matter of law and, even if it were, the facts do not support the defense in this case. He relies primarily on Hall v. Hartford Accident & Indemnity Co., 278 So.2d 795 (La.App. 4th Cir. 1973), writ refused, 281 So.2d 753, and Chaney v. Brupbacher, 242 So.2d 627 (La.App. 4th Cir. 1970).
The Hall case can be initially distinguished from the instant case in that it was an affirmance of the judgment of the trial court in favor of plaintiff pursuant to the jury verdict. The burden in that case on appeal rested on the defendants, whereas in the instant case the burden is squarely on the plaintiff to demonstrate the trier of fact was clearly wrong in their factual findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In addition, the court in Hall was confronted with a charge of contributory negligence on the part of plaintiff stemming from his misuse of a wheel assembly device by over inflating a tire. The court concluded that the supervisory personnel were clearly in a position where they knew or should have known of the dangers involved in this procedure and relieved plaintiff of contributory negligence on the theory that plaintiff had no such knowledge or control over that situation. In describing plaintiff's use of the equipment the court noted that his function was to depress a button in order to inflate the tire and his continuing to do so after the desired pressure was obtained did not necessarily constitute contributory negligence under the circumstances where there was no instrument on the equipment showing the tire pressure. To reach the opposite conclusion the court would have been required to substitute itself for the jury as the fact finder on this narrow point.
In Chaney, the court was impressed with the overall hazardous circumstances of the job where plaintiff was working and found that the employer could not escape liability for sending the workmen into this environment with the argument that plaintiff was contributorily negligent for following these instructions. Under those circumstances the court concluded that the workman's only alternatives were to try to tell his superior how to run the job or to quit. The instant case is clearly distinguishable.
Plaintiff was injured because he either lifted something too heavy or he lifted it from the wrong position. Heavy lifting for a general laborer who does heavy work on a day to day basis is about as routine as walking. This accident did not happen because plaintiff was in a dangerous environment as in Chaney, or because of a momentary misuse of a technical device as in Hall. No safety programs are necessary to teach experienced laborers that they might injure their backs if they undertake to pick up too heavy a load or if they bend their backs over completely in order to pick up a heavy load rather than to use their legs in the process of lifting. Such a safety program would be about as necessary as teaching them to watch where they are walking. What is more important, however, is the fact that plaintiff was not in a position where he reasonably could feel that he had to pick up this load or quit. Champagne was not plaintiff's superior and by his own testimony he did not tell these men how to move the rail because he felt that laborers could figure this out for themselves. All Champagne told them was to move the rail from one point to another, a distance of about ten feet. They could have easily walked the rail that distance by moving one end with the other end on the ground and then by moving the other end until the destination was reached. Had they followed this procedure the weight being lifted by plaintiff would have been well within accepted limits for safe lifting. Plaintiff testified that all five men stretched themselves out along this rail and were trying to walk the whole thing over, which the jury undoubtedly thought was unreasonable and constituted contributory negligence. There was no compulsion or even pressure on *862 plaintiff to perform in this unreasonable manner.
In Galloway v. Employers Mutual of Wausau, 286 So.2d 676 (La.App. 4th Cir. 1973), writ refused, 290 So.2d 333, another case relied on by plaintiff, the court was satisfied that plaintiff was not guilty of contributory negligence because a safe alternative was not as readily available or as obvious to him as the danger of not choosing it. The court reasoned that it was unreasonable to expect him to inform his superior that he should use an overhead crane to remove objects crowding him at his work place and locate those items elsewhere before requiring him to run a lathe. The difference is that plaintiff in the instant case had a reasonable and readily available alternative and the jury undoubtedly held him accountable for his failure to use that alternative. Two other differences are noted between this case and Galloway, namely, in Galloway the court affirmed a jury verdict so that the case was in a different posture on appeal, and Galloway was again an overall dangerous environment situated like Chaney, whereas that element is not present in the instant case. The danger here, if any, was in the manner plaintiff chose to perform a narrow specific task.
Plaintiff contends that the trial judge erred in his instructions to the jury. Defendants had submitted a request for instructions on assumption of risk as well as contributory negligence, and at the charge conference the trial judge informed defendants that he would not give the assumption of risk instruction because the evidence did not warrant such. However, he informed defendants in the presence of plaintiff's counsel that he would not give the requested contributory negligence charge for the reason that it was included in his general charge. Plaintiff's counsel did not object at that time, nor did he object to the general charge. Yet plaintiff now complains that as a matter of law the trial judge erred in giving the contributory negligence charge because if assumption of risk was not applicable then necessarily contributory negligence would not be applicable. Furthermore, he now contends that the wording of the general charge on contributory negligence was erroneous. By failing to object plaintiff waived his right to assign error in this court on the charge, LSA-C.C.P. Art. 1793.
However, even if timely objections had been made the arguments have no merit. First, we see no error in the trial court's wording of the charge on contributory negligence which he defined as the failure to use ordinary and reasonable care under the circumstances. Second, assumption of risk and contributory negligence are not necessarily the same defenses in a suit such as plaintiff's. In a situation like Chaney or Galloway, where the employee is faced with either working in a dangerous environment or quitting, perhaps there is no difference, but where plaintiff is free to perform a routine task according to various alternatives which are readily available to him, and where the employer has given him no specific instructions as to how to do it and has subjected him to no pressure in the method of performance, his performance of that task in an unreasonable manner is nothing more than simple contributory negligence barring his recovery.
We cannot say that the judgment appealed from is clearly wrong and, therefore, it is affirmed.
AFFIRMED.

ON REHEARING
SCHOTT, Judge.
We have granted a rehearing on the limited application of defendants Troutman, Van Ryckegham, Smith and Champagne because we neglected to address in our original opinion the appeal which they have taken from the judgment of the trial court dismissing their third-party demand against Employers Mutual Liability Insurance Company of Wisconsin.
The third-party demand was for attorneys' fees and costs incurred by defendants in a stipulated amount in defending themselves against the main demand based upon the allegation that they were covered under *863 the liability policy issued by Employers. The policy of insurance contains an endorsement which provides that "persons insured" include the following:
"(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and
(i) any director or stockholder thereof while acting within the scope of his duties as such; and
(ii) any executive officer of the named insured while acting within the scope of his employment for the named insured.
The term `executive officer' means any person holding any of the officer positions created by the charter or bylaws of the named insured."
The record supports the conclusion that third-party plaintiffs do not qualify as executive officers under the quoted definition. They admitted that they were not officers, and copies of the charter and bylaws of the corporation show the various positions held by them were not officer positions created by these documents.
However, third-party plaintiffs rely on LSA-R.S. 22:628 as interpreted in Spain v. Travelers Insurance Company, 332 So.2d 827 (La.1976), for their position that the failure of Employers to attach copies of the charter and bylaws to its policy prevents it from relying on those documents to contest coverage.
Prior to its amendment by Act 150 of 1976 (the accident sued on occurred on January 7, 1975) R.S. 22:628 was as follows:
"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless in writing and made a part of the policy. This section shall not apply to the contracts as provided in Part XV of this Chapter."
In the Spain case the court found that the statute was applicable to an exclusion claimed by an excess insurer on the basis of policy provisions which sought to incorporate the primary policy's provisions by reference without actually attaching to the excess policy a copy of the primary policy. But the instant case is clearly distinguishable.
The charter and bylaws of Farmers Export Company do not constitute an "agreement in conflict with, modifying, or extending the coverage." They are purely definitional in identifying who is an executive officer under the policy and were not required by R.S. 22:628 to be attached to the policy for this purpose.
Third-party plaintiffs also contend that they were due a defense by Employers even if there is no coverage pursuant to American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (La. 1969). But this case, too, is distinguishable. There was a policy insuring Czarniecki and the allegation was made that this policy covered the accident sued on. The court held that the duty to defend is governed by the allegations and is broader than coverage under the policy. However, in the instant case there is an allegation of insurance coverage on third-party plaintiffs not under a policy issued to them but to Farmers Export Company. They are strangers to this policy. Surely the Czarniecki doctrine cannot be extended to any case where an insurance company, which is a total stranger to the defendant, is simply alleged to provide coverage. Carried to its logical conclusion, this argument would enable a plaintiff to pick out of the air any insurance company, allege coverage and require the company to defend.
Accordingly, the judgment dismissing the third-party demand against Employers is affirmed.
AFFIRMED.